586 P.2d 1253

**The STATE of Arizona, Appellee,**

v.

**Spencer WATSON, Appellant.**

No. 3089.

Supreme Court of Arizona,
In Banc.

July 20, 1978.

Rehearing Denied Nov. 9, 1978.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Atty. Gen. by William J. Schafer III, Crane McClennen, Frank T. Galati, Asst. Attys. Gen., Phoenix, for appellee.

Molloy, Jones, Donahue, Trachta & Childers, P.C. by Michael J. Meehan, Tucson, for appellant.

CAMERON, Chief Justice.

This is an appeal from a sentence of death imposed after conviction and judgment of guilt to the crime of murder in the first degree, as well as a petition for review of a decision of the trial court pursuant to Rule 32 of the Rules of Criminal Procedure, 17 A.R.S., which held that the defendant was not denied a fair trial because of inadequate assistance of counsel.

We must answer four questions:

1. Is Arizona's death penalty statute, A.R.S. §§ 13–453 and 454, constitutional?
2. Was the defendant otherwise properly sentenced?
3. Was the defendant denied adequate assistance of counsel?
4. Was it error to deny defendant's request for a fingerprint expert at the Rule 32 hearing?

The facts necessary for a determination of this matter are as follows. Defendant was convicted by a jury trial of murder in the first degree, A.R.S. §§ 13–451, 452; armed burglary and burglary, A.R.S. § 13–302; robbery, §§ 13–641, 643; theft of a motor vehicle, A.R.S. § 13–672; and obstructing justice, A.R.S. § 13–541. Defend-

ant was sentenced to death on the murder count; concurrent 99 years to life sentences on the armed burglary, armed robbery, and robbery counts; fourteen to fifteen years on the count of burglary; and time served on the theft of a motor vehicle and obstructing justice counts.

Defendant appealed, raising numerous questions and this court affirmed the convictions, *State v. Watson,* 114 Ariz. 1, 559 P.2d 121 (1976), but vacated the death sentence and remanded the matter to the trial court for resentencing.

Upon remand, the trial court held a complete hearing in mitigation and aggravation and sentenced the defendant to death. The trial court also heard the defendant's Rule 32 petition and found that the defendant was not denied effective assistance of counsel. Defendant appealed the sentencing and petitioned this court for review of the decision of the court in the Rule 32 hearing.

## IMPOSITION OF THE DEATH SENTENCE

Defendant in his brief contended that the death penalty was not proper because the trial court failed to consider certain factors such as duress, youth, and intention as mitigating factors. The trial court, following the prior opinions of this court, did not consider any mitigating circumstances that were not contained in A.R.S. § 13–454(F). We have previously stated:

> "The purpose of A.R.S. § 13–454 is to confine the discretion of the sentencing authority within defined limits. We reject the defendant's construction and hold that subsection D authorizes the trial court to take into account only those mitigating circumstances enumerated in subsection F." *State v. Richmond,* 114 Ariz. 186, 195, 560 P.2d 41, 50 (1976), cert. den. 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977).

After this case was submitted to this court for decision, the United States Supreme Court, in two cases, *Lockett v. Ohio,* —— U.S. ——, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Bell v. Ohio,* —— U.S. ——, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978), struck down as unconstitutional, death penalty statutes that restricted the right of the defendant to show mitigating circumstances which might relieve the defendant of the death penalty.

■ In *Lockett,* supra, a plurality of the United States Supreme Court stated that while its earlier opinions had not always been easy to decipher, the court had assumed, in upholding the death penalty statutes of other states, that the range of mitigating factors listed in the statute was not exclusive. The court then stated:

> "[W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, (footnote omitted) not be precluded from considering *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. (footnote omitted) * * *
>
> *         *         *         *         *         *
>
> "* * * But a statute that prevents the sentencer in all capital cases from giving independent mitigating weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty. When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments.
>
> *         *         *         *         *         *
>
> "The limited range of mitigating circumstances which may be considered by the sentencer under the Ohio statute is incompatible with the Eighth and Fourteenth Amendments. To meet constitutional requirements, a death penalty statute must not preclude consideration of relevant mitigating factors." *Lockett v. Ohio,* —— U.S. ——, ——, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978).

Section F of A.R.S. § 13–454 is exclusive in that pursuant to Section D of A.R.S. § 13–454, the court may consider as mitigating circumstances only those contained therein. It is apparent that this restriction on the use of mitigating circumstances does

not now pass constitutional muster. We hold that A.R.S. § 13–454(F), insofar as it limits the right of the defendant to show additional mitigating circumstances, is unconstitutional.

The next question then is whether the constitutional and unconstitutional portions of A.R.S. §§ 13–453 and 454 are severable so that the constitutional portion of the statute can remain in force and effect.

■ Severability is a question of legislative intent. We have stated:

" '* * * the valid part of a statute will be sustained where the valid and invalid parts are so separate and distinct that it is clear or may be presumed that the legislature would have enacted the former without the latter, if it had known of the invalidity, or, as otherwise stated, if the valid or invalid parts are not so intimately connected as to raise the presumption that the legislature would not have enacted the one without the other, the act will be upheld so far as valid. * * *' (citation omitted)

\*   \*   \*   \*   \*   \*

" 'To be capable of separate enforcement, the valid portion of an enactment must be independent of the invalid portion and must form a complete act within itself. The law enforced after separation must be reasonable in light of the act as originally drafted. The test is whether or not the legislature would have passed the statute had it been presented with the invalid features removed.' (citation omitted)" *Millett v. Frohmiller,* 66 Ariz. 339, 342–43, 188 P.2d 457, 460 (1948).

And:

" '* * * [i]t is well settled in this state that where the valid parts of a statute are effective and enforceable standing alone and independent of those portions declared unconstitutional, the court will not disturb the valid law if the valid and invalid portions are not so intimately connected as to raise the presumption the legislature would not have enacted one without the other, and the invalid portion was not the inducement of the act." *Selective Life Ins. Co. v. Equitable Life Assurance Society of U. S.,* 101 Ariz. 594,

599, 422 P.2d 710, 715 (1967). See also *Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744 (1977); *Iman v. Southern Pacific Co.,* 7 Ariz.App. 16, 435 P.2d 851 (1968).

■ Defendants in Arizona have always had the right to present any evidence in mitigation at the time of sentencing. *State v. Hanley,* 108 Ariz. 144, 493 P.2d 1201 (1972); Rule 26.7, Rules of Criminal Procedure, 17 A.R.S. We can presume that had the legislature been aware of the unconstitutionality of the limitation on mitigating circumstances, they would have enacted the remainder of the statute without what is now the offending portion. We hold that the statute with the portion deleted remains in force and effect.

The matter will have to be remanded for sentencing at which time the defendant will be allowed to present any mitigating circumstances tending to show why the death penalty should not be imposed. This is in accord with the United States Supreme Court which has upheld the constitutionality of a capital sentencing system where any mitigating factor was to be considered by a jury. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

"Thus, in order to meet the requirements of the Eighth and Fourteenth Amendments, a capital-sentencing system must allow the sentencing authority to consider mitigating circumstances. In *Gregg v. Georgia,* we today hold constitutionally valid a capital-sentencing system that directs the jury to consider any mitigating factors * * *" *Jurek v. Texas,* 428 U.S. 262, 271–72, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929, 938 (1976).

■ If the trial judge finds that all the mitigating circumstances presented are "sufficiently substantial to call for leniency," then the death penalty shall not be imposed. A.R.S. § 13–454(D). Since the rest of the statute is still in force and effect, the State will be limited to the aggravating circumstances contained in A.R.S. § 13–454(E).

## WAS THE DEFENDANT PROPERLY SENTENCED?

Defendant raises other questions concerning the imposition of the death penalty. Because they undoubtedly will be raised again, we feel it appropriate to consider them at this time. Defendant specifically contends that the death penalty was not properly imposed because:

a.  Defendant was denied due process by being required to prove the mitigating circumstances listed in the statute.

b.  Defendant was denied Sixth Amendment rights to a jury in that the judge and not the jury determines the aggravating and mitigating factors.

c.  The murder was not committed in an "especially heinous or cruel" manner.

d.  Defendant did not create a grave risk to others.

e.  The 1971 robbery conviction could not be an aggravating factor because there was no violence shown, no factual basis for the plea was shown, and the defendant received a minimum sentence.

f.  Due process required that defendant be resentenced by a different judge.

Our statute reads:

"E.  Aggravating circumstances to be considered shall be the following:

1.  The defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable.

2.  The defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person.

3.  In the commission of the offense the defendant knowingly created a grave risk of death to another person or persons in addition to the victim of the offense.

4.  The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

5.  The defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value.

6.  The defendant committed the offense in an especially heinous, cruel, or depraved manner."  A.R.S. § 13–454(E).

In making its findings of fact, the court found as aggravating factors pursuant to § 13–454(E):

"1.  That the Defendant has been convicted of an offense for which a Sentence of life imprisonment or death was possible, that conviction having been on the charge of Robbery in 1971.

"2.  That the Defendant was convicted of the charge of Robbery in 1971.

"3.  That the victim's wife and stepdaughter were also subjected to great risk of death in the instant offense."

The trial court also found that the offense was committed in an especially heinous, cruel and depraved manner.  However, the aggravating circumstances of § 13–454(E)(4) and (5) were found to be inapplicable on the facts of the case.

a.  Requirement that defendant prove mitigating circumstances

Defendant contends that the statute, in requiring the defendant to prove mitigating circumstances in order to reduce the sentence to life from death, shifted the burden of proof to the defendant in denial of due process.

■ It is true that the State has the burden of proof in a criminal case:

"* * *  As we said in *Speiser v. Randall,* supra, 357 U.S. 513, at 525–526, 78 S.Ct. 1332, at 1342, 2 L.Ed.2d 1460: 'There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account.  Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of * * * persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt.  Due process commands that no man shall lose his liberty unless the Government has

borne the burden of * * * convincing the factfinder of his guilt.'" *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 374 (1970).

*Winship,* supra, was concerned only with the question of innocence or guilt. When the issue of guilt is settled and only the question of punishment remains, due process is not offended by requiring the already guilty defendant to carry the burden of showing why he should receive leniency. This is not contrary to the due process requirement that the State has the burden of proof as to guilt of the defendant. In discussing affirmative defenses when sanity was a question, the United States Supreme Court stated:

> "Among other things, it is 'normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so deeply rooted in the traditions and conscience of our people as to be ranked as fundamental.' (citations omitted)" *Patterson v. New York,* 432 U.S. 197, 201–02, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281, 286–87 (1977).

To require the State to negate every mitigating circumstance would place an impermissible burden on the State. We do not believe it offends due process to require the defendant to show such mitigating circumstances.

### b. Right to jury trial

■ But defendant contends that allowing the judge to determine the mitigating and aggravating circumstances and not the jury is a denial of defendant's Sixth Amendment right to trial by jury. We do not agree. This argument was rejected by the United States Supreme Court in reviewing a similar statute from Florida:

> "The basic difference between the Florida system and the Georgia system is that in Florida the sentence is determined by the trial judge rather than the jury. This Court has pointed out that jury sentencing in a capital case can perform an important societal function, *Witherspoon v. Illinois,* 391 U.S. 510, 519, n. 15, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776, but it has never suggested that jury sentencing is constitutionally required. And it would appear that judicial sentencing should lead, if anything, to even greater consistency in the imposition at the trial court level of capital punishment, since a trial judge is more experienced in sentencing than a jury, and therefore is better able to impose sentences similar to those imposed in analogous cases. (footnote omitted)." *Proffitt v. Florida,* 428 U.S. 242, 252, 96 S.Ct. 2960, 2966, 49 L.Ed.2d 913, 922–23 (1976).

### c. Was the crime heinous, cruel and depraved

Defendant next contends that the finding that the defendant committed the offense in an especially heinous, cruel and depraved manner was erroneous based upon the facts in this case.

In *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976), cert. den. 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977), this court cited with approval from the Florida Supreme Court as follows:

> "* * * It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies—the conscienceless or pitiless crime which is unnecessarily torturous to the victim." *State v. Dixon,* 283 So.2d 1, 9 (Fla.1973). See also *Halliwell v. State,* 323 So.2d 557 (Fla.1975).

The Florida statute has sustained attack in the federal court. *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

Viewing the facts in a light most favorable to upholding the finding of the trial

court, *State v. Ceja*, 115 Ariz. 413, 565 P.2d 1274 (1977), cert. den. 434 U.S. 975, 98 S.Ct. 533–34, 54 L.Ed.2d 467 (1977), it appears that the defendant went upstairs with a gun and that while the defendant was upstairs, the victim obtained his own gun and began shooting at the codefendant, Reid. The defendant came back downstairs and shot the victim in the back four times, the last time while the victim was face down on the floor. Because this was a shoot-out between the victim and the two robbers, we do not feel that the shooting was accomplished in such a manner as to set it apart from the norm of first degree murders, that is the "conscienceless or pitiless crime which is unnecessarily torturous to the victim." *State v. Dixon*, supra; *State v. Richmond*, supra.

Although this murder is, as is any murder, shocking, the conduct of the defendant does not comply with the legislative intent. We do not believe that the killing of the defendant was in a particularly heinous, cruel or depraved manner as contemplated by the statute and that aggravating factor number 6 of A.R.S. § 13–454(E) was not shown.

### d. Grave risk to others

Defendant next contends that the offense was not committed by the defendant knowingly creating "a grave risk of death to another person or persons in addition to the victim of the offense." At the time of the shooting, the victim's wife and daughter had both left the house. The State in its brief concedes that aggravating circumstance number 3 was not shown and we agree.

### e. Prior felony conviction

Defendant was convicted in 1971 of a felony robbery. A state may not use a prior conviction to enhance punishment for a later conviction if the prior conviction was obtained in a constitutionally infirm manner. *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

Defendant contends that this prior conviction should not have been used as a basis for aggravating circumstances 1 and ·2 be-

cause (1) there was no factual basis for the plea, (2) the plea was not intelligently made, (3) there was no violence shown, and (4) the defendant received the minimum sentence.

*North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) requires that the court establish a factual basis for a plea of guilty before it is constitutionally acceptable. We have read the reporter's transcript of the plea of guilty to the prior felony. We believe that there is a sufficient factual basis for such plea. We find no error.

Defendant further contends, however, that the plea was not intelligently made pursuant to *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and therefore was invalid because no one told him at the time that it might be used to impose the death penalty if he was later convicted of murder. Again, we do not agree. There is a limit as to the range of consequences that follows from a plea of guilty that must be told to the defendant at the time of the plea. Defendant need only be told the immediate consequences of his plea. The court need not assume that defendant is contemplating a later murder when the plea of guilty is entered so as to require that he tell him if he does commit the murder the felony to which he is pleading guilty could cause the death penalty to be imposed.

Defendant further contends that there was no showing of force and fear in the 1971 robbery conviction. We do not agree. Fear of force is an element of robbery and the conviction of robbery presumes that such fear was present.

Defendant further contends that since he received only the minimum sentence, the prior conviction may not be used. Again we do not agree. It is the nature of the prior conviction and the sentence possible that is the aggravating circumstance in paragraphs 1 and 2 of Section E—the sentence actually imposed is not controlling although it might be presented as a mitigating factor. We believe the trial court was correct in finding aggravating circumstances 1 and 2.

f. Resentencing by the judge

This court in the previous case of *State v. Watson*, supra, remanded the matter for resentencing because of the failure to disclose portions of the presentence report. We stated:

"In the instant case, the trial court did not state why certain portions of the presentence report were excised and neither did it indicate that it was not considering that material in imposing sentence, here a sentence of death. It is thus impossible to determine from the record whether or not the provisions of A.R.S. § 13–454 were complied with. In light of the specific requirements imposed by that statute and the severity of the punishment involved, we believe that this matter must be remanded for a new hearing and resentencing." *State v. Watson*, supra, 114 Ariz. at 13, 559 P.2d at 133.

■ Upon remand, the same judge sentenced the defendant. Defendant contends that this was error in that the judge, after viewing the extraneous and prejudicial matters in the presentence reports, could not fairly and impartially sentence the defendant. We do not agree.

Section B of 13–454 states as follows: "B. In the sentencing hearing the court shall disclose to the defendant or his counsel all material contained in any presentence report, if one has been prepared, except such material as the court determines is required to be withheld for the protection of human life. Any presentence information withheld from the defendant shall not be considered in determining the existence or nonexistence of the circumstances set forth in subsection E or F. * * *."

Even though the trial judge at the resentencing was careful to state that he did not consider these matters, it is apparent that the defendant had available to him the same information the trial court possessed and that the defendant had a chance to contest it. The only aggravating circumstance which we have held to be applicable to the imposition of the death sentence in this case is the prior felony conviction, and

we find no error in the information received by the court in considering that factor.

We find no error.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his first appeal, defendant raised the issue of ineffective assistance of counsel both in his direct appeal and in a motion under Rule 32. Although it was held that assistance of counsel had been adequate for the purposes of the direct appeal, it was also held that the allegations of defendant's motion under Rule 32 made out a colorable claim under Rule 32.6 and the cause was remanded for an evidentiary hearing on the question of the adequacy of representation by trial counsel. We stated:

"Even though we have held herein that based upon the record on appeal that the defendant has not shown a denial of adequate counsel, this does not mean that at a hearing on the Rule 32 motion he may not be able to show ineffective assistance of counsel such as would bring him under the cases on this subject. In short, we believe that this Rule 32 motion raises a colorable claim of ineffective assistance of counsel which cannot be summarily disposed of without hearing and full factual determination." *State v. Watson*, supra, 114 Ariz. at 15, 559 P.2d at 135.

At the hearing, the defendant, his trial attorney, an investigator from the attorney's office, and Mrs. Lucinda Watson, the defendant's mother and a potential witness, testified about the pretrial investigation. The trial court found that there was insufficient evidence to support the defendant's allegations that his trial counsel had inadequately prepared the case for trial. In this appeal, defendant claims that there was sufficient evidence to show that the trial counsel inadequately prepared the case, in that counsel did not pursue certain information given to him by defendant and that the failure was so great as to be a violation of defendant's constitutional right to be represented by counsel under the Sixth Amendment of the United States Constitution. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Specifically, defendant alleges that the evidence

shows that the trial counsel failed to adequately investigate a potential alibi and the witnesses who would have supported it; to investigate the possibility that a fingerprint exemplar supposedly taken from the defendant was, in fact, not his; and to confer adequately with his client about the case as it progressed.

▆▆▆▆ In order to succeed at the hearing, the defendant had the burden of proof in regard to facts supporting his allegations. Rule 32.8(c), Rules of Criminal Procedure, 17 A.R.S.; *State v. Stice*, 23 Ariz. App. 97, 530 P.2d 1130 (1975). To show ineffective assistance of counsel, the defendant had to show that the original trial had been reduced to a sham or a farce. That is, the defendant had to do more than show that his counsel had been unsuccessful or had made tactical errors. *State v. Watson*, supra. See also *State v. Tellez*, 111 Ariz. 34, 523 P.2d 62 (1974); *State v. Daniel*, 25 Ariz.App. 592, 545 P.2d 440 (1976). Here the trial on its face was not a sham or farce; it was aggressively tried by the trial counsel who presented legitimate defenses and made reasonable challenges to the evidence presented by the State. Therefore, in order to show that the preparation for an otherwise adequate trial was insufficient, defendant had to show that counsel's failure to investigate resulted in not presenting evidence or interposing a defense which would have made a crucial difference to the case at the trial. Compare *State v. Lopez*, 3 Ariz.App. 200, 412 P.2d 882 (1966).

▆▆▆▆ From the record of the hearing on the Rule 32 motion, it is apparent that the defendant failed to meet his burden of proof. In regard to the alibi witnesses, the trial counsel said that a review of his notes indicated that he had made some attempt to contact the suggested witnesses and that they were either unavailable or unsuitable in some way. His testimony was essentially confirmed by the investigator from his office who did recall attempting to find some of the witnesses. The defendant's own testimony also confirmed the trial attorney's recollection; the defendant testified that counsel told him that some of the alibi witnesses could not be used even though available because their credibility would be

brought into question since they were on trial or subject to pending charges. The tactical decision not to call the alibi witnesses also applied to the question of calling the defendant's mother. As a close relative of the defendant, her credibility would be limited. In addition, here her testimony would not have clearly established an alibi as she claimed to have last seen the defendant when he awakened her at approximately 10:00 p. m. on the night in question. This was well after the first incident and about half an hour before the second incident leading to the present charges and convictions. Counsel also stated that he was reluctant to put her on the stand because there had been inconsistencies in the statements which she had given to him and to the County Attorney.

▆▆▆▆ The trial counsel did not specifically remember any discussions with the defendant about the possibility that the fingerprint exemplar was not the defendant's. Defendant claims that the exemplar, which was matched to prints found at the scene, was not his because the finger in question had a scar which would have left an open space on the exemplar. Counsel said that he had arrived at the police station shortly after the prints were taken and assumed that they were defendant's. The officer who took the prints also testified at the trial as to taking them from the defendant. It is significant that at the Rule 32 hearing, defendant presented no evidence that such a scar did, in fact exist, or that it would have made a difference in the outcome of the case.

▆▆▆▆ The record for both the Rule 32 hearing and the trial indicates that counsel spent an adequate amount of time conferring with defendant to prepare the case. Again, the issue here is not whether the defendant is satisfied with the number of times that counsel conferred with him or that counsel followed all of his suggestions, but that there were sufficient meetings for counsel to apprise the defendant of the progress of the case and to represent him adequately.

Analysis of the record indicates that the defendant did not meet his burden of proof

in showing sufficient facts to demonstrate that the preparation done by his trial counsel rendered his trial a sham or a farce. Rule 32.8(c), Rules of Criminal Procedure, 17 A.R.S. We find no error.

## FINGERPRINT EXPERT

In proceedings held before the evidentiary hearing on the motion under Rule 32, defendant's new counsel made a motion for the appointment of a fingerprint expert in regard to the defendant's claim that the exemplar was not his. The motion was made orally and counsel promised that a written motion would follow. No written motion was ever filed. Defendant now claims that it was clear that a written motion would have been denied and that to deny the appointment of such an expert for an indigent client was fundamental error.

██ ██ It is true that A.R.S. § 13–1673 authorizes the appointment of such experts in criminal cases. However, the question of whether the denial of the appointment of such an expert is a violation of due process and of the statute turns on whether there were good reasons for the appointment. Such reasons did not exist in this case. Although a fingerprint expert might ultimately have been necessary to compare a second exemplar submitted by the defendant to show the alleged scar, no second exemplar was submitted. Without the exemplar as an indication of the validity of the defendant's claim, there was no reason for the court to appoint an expert.

Judgment of conviction affirmed; remanded to the trial court for resentencing pursuant to this opinion.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.

## MOTION FOR REHEARING DENIED

## SUPPLEMENTAL OPINION

CAMERON, Chief Justice.

This is a motion for rehearing of a previous decision and opinion of this court. See *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978). Defendant contends in this motion that we did not properly dispose of his allegation that he received ineffective assistance of counsel at the trial, that the Arizona death penalty statute is unconstitutional because of lack of jury participation in sentencing and because of an improper burden of persuasion is placed upon the defendant, and that we misconstrued his arguments concerning his prior conviction. These matters were briefed, argued, and disposed of in the prior opinion and we do not feel it is necessary to consider them again.

Two other questions were also raised in this motion for rehearing. Because these matters were neither briefed nor argued prior to our opinion of 20 July 1978, we considered the motions and memoranda of the parties and granted defendant's motion for oral argument. The questions are:

1. Is the death penalty statute in Arizona severable?
2. Does the reimposition of the death penalty under the procedures newly devised after Watson's trial and sentencing violate the
   (a) double jeopardy and
   (b) ex post facto
   provisions of the United States and Arizona Constitutions?

The facts necessary for a determination of this matter on appeal are as follows. Defendant was convicted in a jury trial of murder in the first degree, A.R.S. §§ 13–451, 452; armed burglary and burglary, A.R.S. § 13–302; robbery, §§ 13–641, 643; theft of a motor vehicle, A.R.S. § 13–672; and obstructing justice, A.R.S. § 13–541. Defendant was sentenced to death on the murder count; concurrent 99 years to life sentences on the armed burglary, armed robbery, and robbery counts; fourteen to fifteen years on the count of burglary; and time served on the theft of a motor vehicle and obstructing justice counts.

Defendant appealed raising numerous questions and this court affirmed the convictions, *State v. Watson*, 114 Ariz. 1, 559 P.2d 121 (1976), but vacated the death sentence and remanded the matter to the trial court for resentencing.

Defendant was resentenced to death and defendant again appealed. This court, in *State v. Watson*, 120 Ariz. 441, 586 P.2d

1253 (1978), following the United States Supreme Court cases of *Lockett v. Ohio*, —— U.S. ——, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Bell v. Ohio*, —— U.S. ——, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978), held that the restriction in the showing of mitigating circumstances in the sentencing provisions of our death penalty statute, Section (D) of 13–454, was unconstitutional We stated:

> "Section F of A.R.S. § 13–454 is exclusive in that pursuant to Section D of A.R.S. § 13–454, the court may consider as mitigating circumstances only those contained therein. It is apparent that this restriction on the use of mitigating circumstances does not now pass constitutional muster. We hold that A.R.S. § 13–454(F), insofar as it limits the right of the defendant to show additional mitigating circumstances, is unconstitutional." 120 Ariz. at 444, 586 P.2d at 1256.

We then held that the statute remained in full force and effect and that only the portion limiting the factors in mitigation should be set aside. The matter was then remanded for resentencing pursuant to the opinion which allowed the defendant the right to present any mitigating factors he wished to present at the resentencing. From this opinion defendant filed the instant motion for rehearing.

## SEVERABILITY OF THE STATUTE

Defendant first contends that the statute, A.R.S. § 13–454, cannot be severed because the "legislature neither intended a capital sentencing procedure without mitigating factors, nor is the statute workable without it."

We agree that the statute would not be constitutional without the provision allowing the defendant to present mitigating factors. We also agree that the legislature did intend that the defendant be allowed to present mitigating factors. What the legislature did, however, was to limit the number of mitigating factors that could be presented by the defendant and it was this limitation that we held was unconstitutional under *Lockett* and *Bell*, supra. The statute, with the addition of the amount of mitigating factors that may be presented, is still a workable statute even though shorn of its unconstitutional limitations.

But defendant also contends that two questions must be answered before an unconstitutional statute may be severed from the remainder and the remainder allowed to remain in force and effect. First, it must be apparent that the legislature intended severability, and second, the invalid portion must be sufficiently independent from that which remains to permit the latter to function separately.

We believe defendant has misread the law and our opinion in this matter. The only way a court can be sure that the legislature intended severability is by the existence of a severability clause in the statute itself. When that is the case, there is no question that severability is intended. It is only when the statute is silent as to severability that a problem arises. In those cases:

> "If the objectionable parts of a statute are severable from the rest in such a way that the legislature would be presumed to have enacted them independently, the failure of the latter will not necessarily render the other parts of the statute invalid. * * *" *State ex rel. Berger v. Superior Court*, 106 Ariz. 365, 370, 476 P.2d 666, 671 (1970).

The general rule in Arizona is:

> " * * * if part of an act is unconstitutional and by eliminating the unconstitutional portion the balance of the act is workable, only that part which is objectionable will be eliminated and the balance left intact. (citations omitted)" *State v. Coursey*, 71 Ariz. 227, 236, 225 P.2d 713, 719 (1950).

This is in accord with the general rule concerning unconstitutional portions of a statute:

> "A statute may contain some such provisions, and yet the same act, having received the sanction of all branches of the legislature, and being in the form of law, may contain other useful and salutary provisions, not obnoxious to any just constitutional exception. It would be inconsistent with all just principles of constitutional law to adjudge these enactments

void because they are associated in the same act, but not connected with or dependent on others which are unconstitutional." Cooley, Constitutional Limitations, Vol. 1 at page 360 (8th ed., Little & Brown Co.).

We believe there is sufficient evidence in the legislative history of the enactment of this statute as well as the statute itself from which it is apparent that had the legislature anticipated that the legislation on mitigating factors would be found unconstitutional they would still have enacted the rest of the statute. Indeed, there is more than ample indication that the legislature intended a death penalty statute and were prepared to write one that complied with the United States constitutional guidelines. That they faltered in one portion of the statute is hardly the fault of the legislature considering the lack of direction given by a series of confusing and indecisive opinions of the United States Supreme Court. See *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). We find the severability was proper in this case.

Defendant finally points to Chapter 138, Laws of 1973, Section 10. This provision is not contained in the bound volumes of the Arizona Revised Statutes. It is, however, a part of the legislation passed in 1973. The provision reads:

"In the event the death penalty is held to be unconstitutional on final appeal, a person convicted of first degree murder or another offense punishable by death who has been sentenced to die shall be resentenced by the sentencing court to life imprisonment without possibility of parole until the person has served a minimum of twenty-five calendar years." Sec. 10, Ch. 138, Laws 1973.

Defendant contends that since we have found the death penalty unconstitutional, we therefore must sentence the defendant to twenty-five years. We do not agree.

We did not find the death penalty to be unconstitutional. We held only that in determining the death penalty there are certain factors which, if presented by the defendant, the court must consider. The statute, as severed, is valid.

## CONSTITUTIONALITY OF THE IMPOSITION OF THE DEATH PENALTY

### a. Double jeopardy

Defendant next contends that remanding the case for new sentencing violates his Fifth and Fourteenth Amendment privilege against being placed twice in jeopardy. There is no doubt that the double jeopardy clause applies to sentencing as well as conviction, *Ex parte Lange*, 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872 (1873), and defendant cites several cases, two from California, *People v. Harvey*, 76 Cal.App.3d 441, 142 Cal.Rptr. 887 (1978) and *People v. Payne*, 75 Cal.App.3d 601, 142 Cal.Rptr. 320 (1977), as well as the South Carolina case of *State v. Rodgers*, 242 S.E.2d 215 (S.C.1978) in support of his position. All three of these cases are distinguishable. In each of those cases, the defendants, after having been sentenced to death, had their sentences reduced to life imprisonment. After they had commenced to serve the life sentences, the state sought to have them resentenced under legislation enacted after the crime and the reversal. Thus, after the life sentences were at least partially served, the state attempted to subject them to another different and higher punishment. The California court said in *Harvey*, supra, that when a new death penalty statute was enacted in August of 1977 and the state sought to have the case returned to the trial court for resentencing under the valid 1977 statute, it was double jeopardy. We agree with the California court, but these cases are clearly distinguishable and do not apply to the case at bar. The defendant in the instant case never served his sentence (of death). His death sentence was not reduced to life imprisonment but was merely set aside pending resentencing. We find no violation of the double jeopardy clause in the instant case. See also *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

### b. Ex post facto law

Defendant also contends that this court's action is improper because it is an ex post facto law. We believe that the United States Supreme Court has disposed of this matter as follows:

"Petitioner's second ex post facto claim is based on the contention that at the time he murdered his children there was no death penalty 'in effect' in Florida. This is so, he contends, because the earlier statute enacted by the legislature was, after the time he acted, found by the Supreme Court of Florida to be invalid under our decision in *Furman v. Georgia*, supra. Therefore, argues petitioner, there was no 'valid' death penalty in effect in Florida as of the date of his actions. But this sophistic argument mocks the substance of the ex post facto clause. * * * The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability which the State ascribed to the act of murder

"Petitioner's highly technical argument is at odds with the statement of this Court in *Chicot County Drainage District v. Bank*, 308 U.S. 371, 375, 60 S.Ct. 317, 319, 84 L.Ed. 329:

'The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. (citations omitted) It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored.' 308 U.S., at 374, 84 L.Ed. 329, 60 S.Ct. 317.

"Here the existence of the statute served as an 'operative fact' to warn the petitioner of the penalty which Florida would seek to impose on him if he were convicted of first-degree murder. This was sufficient compliance with the ex post facto provision of the United States Constitution." *Dobbert v. Florida*, 432 U.S. 282, 297–98, 97 S.Ct. 2290, 2300, 53 L.Ed.2d 344, 358–59 (1977).

In the instant case, we are only concerned with a procedural change and one which increases the rights of the defendant in death penalty cases. We do not believe there is an ex post facto problem. We find no error.

## DUE PROCESS AND CRUEL AND UNUSUAL PUNISHMENT

Defendant also contends in the motion for rehearing that there was a violation of due process and of the cruel and unusual punishment provisions of the United States Constitution. Defendant did not pursue this position in his brief, cited no authority in support of his contention and we found none. We find no error.

Motion for rehearing denied.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.