James Alan ARNETT, Petitioner,

v.

James R. RICKETTS, et al., Respondents.

No. Civ 83–2157 PHX CLH.

United States District Court, D. Arizona, Phoenix Division.

Feb. 25, 1987.

## MEMORANDUM OPINION
## AND ORDER

HARDY, District Judge.

This is a habeas corpus proceeding brought pursuant to 28 U.S.C. § 2254. The petitioner, James Alan Arnett, challenges his conviction of first degree murder and his sentence of death by raising 24 issues. On November 26, 1985, the court, *sua sponte*, ruled against him on eight of the issues. The parties have filed motions for partial summary judgment on 13 of the 16 remaining issues. Partial summary judgment will be granted in favor of petitioner on five of those issues and in favor of respondents on eight. Additionally, on its own motion, the Court grants partial summary judgment in favor of petitioner on a fourteenth issue.

### I.  PROCEDURAL BACKGROUND

On March 19, 1976, a Mohave County grand jury indicted Arnett for first degree murder and grand theft auto. Venue was changed to Yavapai County. A jury found Arnett guilty. After a hearing to consider aggravating and mitigating factors ("the aggravation-mitigation hearing"), pursuant to A.R.S. § 13–703, Arnett was sentenced to die. An appeal was automatically taken to the Arizona Supreme Court. It affirmed. *State v. Arnett*, 119 Ariz. 38, 579 P.2d 542 (1978).

Because of the Arizona Supreme Court's decision in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *motion for reh'g denied*, 120 Ariz. 451, 586 P.2d 1263 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), that Arizona's death penalty statute, A.R.S. § 13–454, was unconstitutional insofar as it limited the rights of a defendant to show mitigating circumstances other than those enumerated in the statute, the state moved to have Arnett resentenced. The motion was granted and a hearing to consider additional mitigating evidence ("the mitigation hearing") was held. After the hearing, Arnett was again sentenced to die. The Arizona Supreme Court affirmed the resentencing. *State v. Arnett*, 125 Ariz. 201, 608 P.2d 778 (1980).

John Trebon, Flagstaff, Ariz., for petitioner.

Diane M. Ramsey, Asst. Atty. Gen., Phoenix, Ariz., for respondents.

Arnett then commenced a post-conviction relief proceeding pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. Although many of Arnett's grounds for post-conviction relief related to matters that were not challenged by objection or otherwise in the trial or sentencing proceeding, the court ruled on the merits:

> The Court finds that no material issue of fact or law exists and no colorable claim to relief exists and that no appearance of validity exists with respect to any claim presented and that no purpose would be served by any further proceedings; therefore, the Petition and the Amended Petition for Post-Conviction Relief are dismissed, the Motion for Evidentiary hearing is denied, the Motion for Discovery is denied, the Motion to Clarify the Record is denied, and the Motion to Provide Expert and Investigation Assistance is Denied.

Arnett did not move for rehearing, a condition precedent for review by the Arizona Supreme Court. *See* Rule 32.9 (a and c), Arizona Rules of Criminal Procedure.

## II.  EXHAUSTION OF STATE REMEDIES

■  A threshold question is the effect to be given to Arnett's failure to move for a rehearing of the court's order denying post-conviction relief. An applicant for habeas corpus relief must first exhaust the remedies available to him in the state court. 28 U.S.C. § 2254(b). However, the exhaustion requirement is a matter of comity, not of jurisdiction. Exhaustion of state remedies may be waived by the state. *Cosby v. Jones*, 682 F.2d 1373 (5th Cir.1982); *McGee v. Estelle*, 722 F.2d 1206 (1984), *on remand* 732 F.2d 447. Waiver may be inferred when the state fails to raise lack of exhaustion of remedies. *See Lamb v. Jernigan*, 683 F.2d 1332, 1335, n. 1 (11th Cir.1982); *Truitt v. Jones*, 614 F.Supp. 1342 (D.C.Ga.1985). Here, the state has not challenged Arnett's failure to exhaust state remedies but has addressed the issues on their merits.

■  Exhaustion may also be waived if the interest of justice so requires. *See Sweet v. Cupp*, 640 F.2d 233, 237 n. 5 (9th Cir.1981). All of the issues raised by Ar-

nett in his post-conviction relief proceeding related to sentencing. The interest of justice requires that they be considered.

## III.  TRIAL ISSUES

Arnett has raised three issues relating to his trial.

### A.  *Lack of Impartial Jury*

Between February 10, 1976, the date the murder victim's body was discovered, and June 24, 1976, Mohave County newspapers carried 24 stories about the case. The headlines for seven of the stories contained Arnett's name. During that period the Arizona Republic carried six articles about the case. None of them contained Arnett's name in the headline. On June 24, 1976, Arnett's motion for change of venue was granted and the case was transferred to Yavapai County. A Prescott newspaper had a story that day with the headline "Shooting Trial Moved to Prescott." On June 25, 1976, the Arizona Republic carried another story about the case with the headline "Testimony Leak Investigated in Killing."

There are three newspapers in Mohave County. The Kingman Daily Miner carried thirteen stories about the case including four in which Arnett's name was in the headlines. The Lake Havasu City Herald carried nine stories including three in which Arnett's name appeared in the headlines. The Mohave Valley News carried one story which had Arnett's name in the headline. It cannot be presumed that any of these newspapers was widely circulated in Yavapai County. On the other hand, the Court takes judicial notice that the Arizona Republic is circulated in Yavapai County. However, six of the Arizona Republic's stories were published before March 11, 1976, almost four months before trial commenced.

Arnett's trial commenced on July 19, 1976. During jury selection, seven prospective jurors stated that they had read newspaper articles about the case. All stated that what they had read would not prevent them from being fair and impartial jurors. None of them was challenged by

Arnett for cause. Three of them were selected to serve as jurors in the case. One of the three said she had read "an article" about the case, one said she had read "a newspaper," and one said she had read "the newspaper." It cannot be presumed that what was read by these three jurors made it impossible for them to be fair and impartial jurors.

■ The right to an impartial jury does not mean that the jury must be ignorant of the subject matter involved. *Bashor v. Risley,* 730 F.2d 1228, 1235 (9th Cir.), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). The relevant question is not whether the prospective jurors remembered the case but whether the jurors selected for trial had such fixed opinions that they could not judge the defendant impartially. *Hobbs v. Lockhart,* 791 F.2d 125, 128 (9th Cir.1986). Arnett has not shown that the jury was not impartial.

### B. *Lack of Proof of Intent to Kill*

■ Arnett argues that there was no proof that he intended to kill the victim. Arnett shot the victim five times. That fact in itself is sufficient to justify a finding of intent to kill. *See State v. Arnett,* 125 Ariz. 201, 203, 608 P.2d 778, 780 (1980).

### C. *Nonunanimous Jury Verdict*

The jury was instructed that "first-degree murder is murder which is the result of premeditation.... Murder by means of ... lying in wait ... or which is committed in the attempt to commit ... robbery ... is also first-degree murder." The jury was also instructed that "all 12 of you must agree on a verdict. All 12 of you must agree whether the verdict is 'guilty' or 'not guilty.'"

■ Arnett claims that the verdict of guilty of first-degree murder violated his Sixth Amendment right to a unanimous jury verdict and the due process clause of the Fourteenth Amendment because the jurors may not have been unanimous in how they arrived at the conclusion that he committed first-degree murder. While a unanimous verdict is required to convict a person of a crime, he is not entitled to a unanimous verdict on the precise manner in

which the act was committed. *State v. Encinas,* 132 Ariz. 493, 496, 647 P.2d 624, 627 (1982).

■ If the failure to instruct the jury that it must unanimously agree on whether the murder was premeditated or by lying in wait or in the attempt to commit a robbery is a constitutional error, it was harmless beyond a reasonable doubt. Arnett admitted that he had gone to a shack to retrieve his rifle with the intent of "stealing" the victim's truck. As the Arizona Supreme Court pointed out in *State v. Arnett,* 119 Ariz. at p. 49, 579 P.2d 542 the physical evidence sustained a finding that Arnett had been lying in wait for the victim when he shot him. The very fact of lying in wait in itself suggests premeditation. A reasonable jury would have returned a guilty verdict regardless of the error.

## IV. SENTENCING ISSUES

### A. *Lack of Notice of Aggravation*

■ The State did not give Arnett any notice of the aggravating factors that it would rely upon and the witnesses it would call at the aggravation-mitigation hearing. Due process requires that a person convicted of first degree murder be given notice of the factors the state will rely on at the aggravation hearing and the witnesses who will testify against him so that he will have an effective opportunity to defend by confronting the witnesses and by presenting his own evidence. *See Goldberg v. Kelly,* 397 U.S. 254, 267–8, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970).

The State called only one witness at the aggravation hearing, Dr. Baker, the psychiatrist who had examined Arnett in behalf of the state before trial. Arnett's counsel had no opportunity to prepare to cross examine him or to attempt to obtain rebuttal evidence. Similarly, Arnett had no opportunity to attempt to prove that the prior conviction which the court relied upon as a basis for finding two aggravating factors, was invalid. Indeed, Arnett unwittingly provided support for the aggravating factors that the court ultimately relied upon to impose the death penalty.

After the trial court granted the state's motion to have Arnett resentenced, the state did not give him explicit notice of the factors it would rely upon in seeking the death penalty. However, he must have known that the state was relying upon his prior conviction and the testimony of Dr. Baker. Arnett had the opportunity to marshall evidence to dispute the validity of the prior conviction and to rebut Dr. Baker. He did not do so. In fact, no new evidence was submitted at the sentencing proceeding. The trial judge incorporated the findings and conclusions that he had made at the time of the first sentencing.

### B. *Miranda Violation by Psychiatrist*

Pursuant to Rule 16.3c of the Arizona Rules of Criminal Procedure, counsel for the state and Arnett filed an omnibus hearing form, which specified that one of the issues which would be raised would be a determination of Arnett's sanity. The trial court entered an order granting "motion for psychiatry evaluation." Dr. Harrison Baker was appointed to serve as a mental health expert on behalf of the state "to examine the mental condition of Jim Alan Arnett." Dr. Jacob Hoogerbeets was appointed to serve as Arnett's mental health expert. The notice of appointment to the doctors stated that their reports should include "the probable mental condition of the defendant at the time he committed the offense" and the "relation of such [mental] disease or defect to the alleged offense."

Arnett was sent to the Arizona State Hospital, where he stayed for eight days. During that time, Dr. Baker and his staff administered a battery of psychological tests, obtained an extensive history of Arnett's social background and criminal record through questioning him, and conducted a neurological examination. This testing went beyond the testing that is typically done for a determination of sanity or competency. It enabled Dr. Baker to arrive at a distinct psychological diagnosis, including the prediction of Arnett's expected behavior.

Dr. Baker did not inform Arnett at any time during the examination that he had the right to remain silent or the right to the presence or advice of an attorney.

In a two-page report to the court, Dr. Baker concluded that Arnett was competent and did not suffer from any mental illness at the time of the murder. He mentioned that it was unlikely that the murder was premeditated. Dr. Baker and his staff prepared other reports but they were not submitted to the court or to counsel. The trial court found that Arnett was competent to stand trial.

Dr. Baker was the only witness called by the state to testify at the aggravation-mitigation hearing in 1976. He testified that Arnett understood what he was doing and could appreciate the nature of his act and its legal ramifications; that Arnett was not acting under or experiencing any unusual or substantial duress; and that he was not suffering any form of mental illness or any form of psychosis or mental disorder at the time of the murder. Dr. Baker described the crime as one that was "an impulsive, somewhat quick and valid but planned, but imperfectly planned behavior," which was a result of some of Arnett's main personality elements, including a feeling that society had given him "a short shrift in life." He diagnosed Arnett as "a rather controlled anti-establishment type of, sort of rebellious type of individual," who had displayed "a long standing pattern" of "dissocial behavior." He predicted that people like Arnett were "not rehabilitable under any form of plan or treatment currently known, either in the correctional or in the psychiatric field at this time."

Arnett contends that the conduct of Dr. Baker and his subsequent testimony at the aggravation-mitigation hearing violated his constitutional rights. He relies on *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), a case that also involved the uses of psychiatric testimony during the sentencing phase of a capital murder case. In *Estelle*, a psychiatrist appointed to determine Smith's competency interviewed him at the jail for 90 minutes and concluded that he was competent to stand trial. His report to the trial judge also noted that Smith was a "severe sociopath" but did not elaborate on this point. He did not testify at the guilt phase of the trial. At the sentencing phase he testified

about the future dangerousness of Smith, which, under Texas law was an issue critical to the imposition of the death penalty. He stated that Smith was a severe sociopath who would only get worse, that he could not be rehabilitated, that he had no remorse for his acts, and that he would commit similar acts in the future given the opportunity. Smith was sentenced to death.

The United States Supreme Court ruled that the admission of the psychiatrist's testimony at the sentencing hearing violated Smith's Fifth Amendment right against compelled self-incrimination and his Sixth Amendment right to counsel at a critical stage of the proceedings against him.

With respect to the Fifth Amendment violation, the court found that the psychiatrist's interview went beyond the routine competency examination. Smith was unaware that the psychiatrist was obtaining testimony that could be used against him at the sentencing phase of the trial. The court noted that when the examination went beyond the limited scope of competency, the doctor became an agent of the state and should have warned Smith that he did not have to answer questions and that he had the right to the presence and assistance of counsel during his interview with the psychiatrist.

▪ The state attempts to distinguish this case from *Estelle*. First, it argues that Arnett waived his constitutional rights when he requested a sanity examination before trial and when he attempted to call Dr. Baker to testify at trial that the murder was not premeditated. There is no merit to either of these contentions. The state also argues that Arnett waived his constitutional rights by failing to object to Dr. Baker's testimony at the aggravation-mitigation hearing. However, at that time, *Estelle* had not yet been decided. The state has not shown that any rule of law similar to that expressed in *Estelle* existed in Arizona at the time of either sentencing. Without such state law precedent, Arnett's counsel could not be expected to raise the objection. *See Muniz v. Procunier*, 760 F.2d 588, 589–90 (5th Cir.1985).

The State also attempts to minimize the impact of Dr. Baker's testimony, contending that it did not truly address any issue essential to the trial court's consideration. Perhaps not, but it was used by the State to support its argument for the imposition of the death penalty. The potentially prejudicial effect of Dr. Baker's testimony is obvious when one considers the Arizona Supreme Court's opinion in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978) and the language of the resulting statute, A.R.S. § 13–703G:

> Mitigating circumstances shall be any factors proferred by the defendant or the state, which are relevant in determining whether to impose a sentence less than death, including *any aspect of the defendant's character, propensities or record* and any of the circumstances of the offense....

The testimony of Dr. Baker was not harmless error.

### C. *Miranda Violation by Probation Officer*

After he was found guilty of first degree murder, Arnett was interviewed by a probation officer, Gerald Snell, for the purpose of preparing a presentence report. The probation officer did not inform Arnett of his constitutional rights to remain silent and to have the assistance of an attorney or that his answers could be considered by the trial judge in deciding an appropriate sentence. Arnett recounted the details of the crime that were subsequently used to prove two aggravating factors under the Arizona death penalty statute. The details provided by Arnett were included in the presentence report.

Arnett contends that the rule of *Estelle v. Smith* is applicable here. In *Jones v. Cardwell*, 686 F.2d 754, 756 (9th Cir.1982) the Court of Appeals found "the Fifth Amendment privilege against self-incrimination applicable to the state's use of appellee's probation interview." The court did not address the issue whether a defendant is entitled to Miranda warnings in those circumstances because it found that the

statements made to the probation officer had not been made voluntarily.

Given the applicability of the Fifth Amendment privilege against self-incrimination to the state's use of a probation interview, it logically follows that a defendant should be given his Miranda warnings before discussing details of other crimes with the probation officer.

■ Arnett's statements to the probation officer did indeed expose him to serious consequences. They were the only competent evidence presented at the aggravation-mitigation hearing to prove that he had a prior conviction.

### D. *Denial of Confrontation at Sentencing*

■ In 1970 Arnett was convicted of theft in Indiana and served in the Indiana State Prison. In 1972 he was convicted of lewd and lascivious conduct in California and served time in at least two California correctional institutions. In the course of preparing the presentence report, the probation officer obtained from the California Department of Corrections a "Cumulative Case Summary" of Arnett. The summary included a "Social Evaluation" and an "Adult Authority Board Report" that were prepared by correctional counselors, a psychological report prepared by a staff psychologist and two psychiatric evaluations prepared by a staff psychiatrist. These evaluations and reports were devastating. They characterized Arnett as a pedophile, a sexual deviate, not amenable to treatment and dangerous. Many of these conclusions were incorporated into the presentence report. Arnett had no opportunity to test the validity of these conclusions by cross-examining the persons who prepared the evaluations and reports.

### E. *Lack of Competent Proof of Aggravation*

In determining whether to impose a sentence of death, the trial court considered two aggravating circumstances: (1) Arnett had been convicted of another offense for which under Arizona law a sentence of life imprisonment or death was imposable, and (2) Arnett had previously been convicted of a felony involving the use or threat of violence on another person. See A.R.S. § 13-703F. These aggravating circumstances were based upon a finding that Arnett had been convicted of a violation of Section 288 of the California Penal Code, lewd and lascivious acts upon the body of a child under 14.

A.R.S. § 13-703C places the burden of proving aggravating circumstances on the state and requires that evidence relevant to an aggravating circumstance "shall be governed by the rules governing the admission of evidence at criminal trials." The prosecution never offered any evidence to establish an aggravating circumstance. The only evidence was the rap sheet and the various California prison system reports attached to the presentence report, which were clearly hearsay, and Arnett's own admissions.

■ Here is a situation where the fundamental error rule applies. Because the prosecution had the burden of proving aggravating circumstances, the trial court should have required the state to go forward in presenting evidence of aggravating circumstances. The trial court's failure to do so deprived Arnett of due process.

### F. *Multiplication of Aggravating Factors*

As already noted the trial court relied upon a felony conviction in California to establish two aggravating factors. The trial court found the same aggravating circumstances as previously and did not "find any mitigating circumstances sufficiently substantial to call for leniency."

Since the resentencing, the Arizona Supreme Court has held that the same felony conviction can constitute two aggravating circumstances, but in balancing factors of aggravation and mitigation, the trial court may only weigh aggravating circumstances out of the same felony conviction once. *State v. Tittle*, 147 Ariz. 339, 345, 710 P.2d 449 (1985).

■ Under Arizona law, a death sentence may be based upon a finding of only one aggravating circumstance and a finding that there are no mitigating circum-

stances sufficiently substantial to call for leniency. A.R.S. § 13–703E. Had the trial court weighed Arnett's California felony conviction only once, it is doubtful that the ultimate decision would have been different. In any event, since this case must be returned to the state court at least for further sentencing proceedings, the trial court will be expected to weigh the California conviction only once.

### G. *Statutory Preclusion of Non-Statutory Mitigation*

In weighing aggravating and mitigating circumstances at the time of the first sentencing in 1976, the trial court confined itself to the circumstances provided for by A.R.S. § 13–703F and G. A sister of Arnett testified at the 1976 aggravating-mitigation hearing. She testified that Arnett had been physically mistreated by his stepfather, that he had been homosexually assaulted as a child and that he had had other hardships and emotional problems. The dictates of A.R.S. § 13–454F necessarily precluded the trial court from considering the testimony of the sister. After *State v. Watson* was decided, it was the state, not Arnett, who requested the court to resentence him so that additional mitigating evidence could be presented.

At the 1978 mitigation hearing, the court asked counsel for Arnett "Do you wish to add to, or state anything else for the record in mitigation?" After consulting with his client, Arnett's counsel responded "Your Honor, we do not at this time, and just to clarify the record we would reurge the court to consider all mitigating circumstances, and particularly incorporate any testimony given in the prior proceedings into its consideration for purposes of this hearing."

Having been afforded the opportunity to present additional mitigating evidence, the preclusion of non-statutory mitigating evidence by Arnett in 1976 was harmless.

### H. *Lack of Due Process at Resentencing*

No evidence was presented to the trial court at the 1978 mitigation hearing. In making findings of the circumstances of aggravation and mitigation, the court relied upon what had been presented previously in 1976 as well as a Request for Findings of Facts and Memorandum in Mitigation filed by Arnett's attorneys prior to the second mitigation hearing.

Arnett now contends that he was denied due process of law by the failure of the court to consider "fresh" testimony. As discussed above, to the extent that proof of his California convictions was not made by the state but by Arnett himself, he was denied due process.

However, the failure of the trial court to require fresh evidence appears to have been invited by Arnett's attorneys. In the Request for Findings of Facts and Memorandum in Mitigation, the court was informed:

> ... Apparently, the state, on the other hand is not allowed to present evidence, except, perhaps in rebuttal as to any new mitigating factors.
>
> Assuming this procedure represents a currently accepted practice, it is the defendant's intention, in light of the already extensive evidence presented at the aggravation-mitigation hearing on August 24, 1976, not to present further testimony at the new hearing but rather to acquaint this court with those mitigating factors the defendant wishes the court to consider prior to sentencing.

### I. *Denial of Jury Trial on Facts*

Arizona is one of only four states where the determination whether to sentence a defendant convicted of first degree murder to life or death is vested solely in the trial judge. Arnett contends that the denial of a trial by jury on this issue violates the Sixth and Eighth Amendments. This contention has been rejected by the United States Supreme Court. *See Spaziano v. Florida*, 468 U.S. 447, 464, 104 S.Ct. 3154, 3165, 82 L.Ed.2d 340 (1984).

### J. *Invalid California Conviction*

On May 1, 1970, Arnett pleaded guilty to the charge of violating Section 288 of the California Penal Code. He has averred by affidavit that during the change of plea proceedings, the trial judge did not inquire

whether or not any promises had been made to him, did not inform him of his privilege against compulsory self-incrimination and his right to confront and cross-examine his accusers, did not question him to determine if his plea of guilty was voluntary and intelligent, and did not question him in order to obtain a factual basis for the plea. The state has offered nothing by way of affidavit or otherwise to refute the averments of Arnett's affidavit. Thus, there is no issue of fact.

■ Instead, the state argues that Arnett cannot collaterally attack his California conviction. The state is wrong. A prior conviction that is constitutionally infirm cannot "be used against a person either to support guilt or enhance punishment for another offense." *Burgett v. Texas*, 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967); *Leano v. United States*, 494 F.2d 361 (9th Cir.1974), subsequent appeal, 592 F.2d 557 (9th Cir.1979).

■ A failure by a trial court to determine whether a plea of guilty is being entered voluntarily and intelligently denies a defendant due process of law. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

One of Arnett's grounds for habeas corpus relief is ineffective assistance of counsel. Incompetence of counsel and prejudice to the defendant are necessary to establish ineffective representation, *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). However, he has not sought summary judgment on that issue but has informed the court that an evidentiary hearing would be sought. An evidentiary hearing is not necessary for a determination of whether Arnett had the effective assistance of counsel during the sentencing phase of the case. It is clear from the record that Arnett was not effectively represented during the two post-verdict sentencing proceedings.

■ Arnett's attorney represented him incompetently during the sentencing proceedings. Before the aggravation-mitigation hearing was held, he did not demand that he be given notice of the aggravating factors upon which the court was relying in urging that a sentence of death be imposed. At the commencement of the hearing, when the state announced that it had nothing in the way of evidence to present, he did not move for a finding that the state had failed to carry its burden of establishing the existence of any aggravating circumstance, as required by A.R.S. § 13–703C. He did not object to the court's consideration of the hearsay statements in the rap sheet and various reports from the California prison system. Instead, he called his own client to the stand to elicit the only competent evidence to support the court's finding of aggravating factors. He permitted the same matters to be considered by the trial court at the mitigation hearing.

Arnett was prejudiced by his attorney's incompetence. The only competent evidence to support the aggravating factors came from Arnett's own lips.

Ineffective assistance of counsel at the sentencing phase is established as a matter of law.

## VI. OTHER ISSUES

■ Summary judgment was not sought on two other issues raised by Arnett in his petition—coerced confession and unconstitutional presumption [of malice from use of a deadly weapon]. A state court determination of a factual issue after hearing on the merits is presumed to be correct. 28 U.S.C. § 2254(d). After an evidentiary hearing before trial, the court ruled that a confession by Arnett was admissible. The evidence presented at that hearing is fully discussed by the Arizona Supreme Court in *State v. Arnett*, 119 Ariz. 38, 42–47, 579 P.2d 542 (1978). However, the Section 2254(d) presumption does not apply to the admissibility of a confession; plenary federal review is required. *Miller v. Fenton*, 106 S.Ct. 445, 452 (1985). An evidentiary hearing on the issue of the admissibility of Arnett's confession must be held.

However, Arnett's contention that instructing the jury that it could find malice

solely from the fact that the defendant "used a deadly weapon in the killing" created an unconstitutional presumption, raises no issue of fact but is purely a question of law.

## ORDERS

IT IS ORDERED that partial summary judgment be entered in favor of the petitioner, James Alan Arnett, on the following issues:

1. Miranda violation by psychiatrist.

2. Miranda violation by probation officer.

3. Denial of confrontation at sentencing.

4. Lack of competent proof of aggravation.

5. Ineffective assistance of counsel at sentencing phase.

6. Invalidity of California conviction.

IT IS FURTHER ORDERED that partial summary judgment be entered in favor of the respondents on the following issues:

1. Lack of impartial jury.

2. Lack of proof of intent to kill.

3. Non-unanimous jury verdict.

4. Lack of notice of aggravation.

5. Multiplication of aggravating factors.

6. Statutory preclusion of non-statutory mitigation.

7. Lack of due process at resentencing.

8. Denial of jury trial on sentencing issues.

IT IS FURTHER ORDERED setting hearing on issue of coerced confession on Friday, April 10, 1987, at 9:00 a.m.