PEOPLE v SHIVELY

1. CRIMINAL LAW—CORRECTIONAL PLAN—REHABILITATION—INCARCER-
ATION—PROTECTION OF SOCIETY.

While the ultimate hope of any correctional plan, be it probation
or prison, is to rehabilitate the defendant, if possible, and make
his return to society a successful one, the judiciary cannot be
unmindful of the fact that the interests of society must also be
protected; were a defendant's rehabilitation the sole criterion
upon which a correctional plan was based, rarely, except when
the defendant was a danger to himself, would incarceration be
warranted; the defendant's rehabilitation is not the sole crite-
rion, but it is rather one which must be considered along with
the question of the protection of society as a whole.

2. HOMICIDE—FAMILY MURDERS—RECIDIVISM—INCARCERATION—SERI-
OUSNESS OF OFFENSE.

Although the recidivism rate for family murders is commonly
quite low, the courts cannot be unmindful of the seriousness
attached by society to the taking of a human life; and, in a case
where the defendant had been originally charged with first-
degree murder but allowed to plead to manslaughter, which
was undoubtedly an affront to a sizable segment of society, the
court acted properly in refusing to grant probation, because to
allow a person to remain in society without being subjected to
some post-sentence incarceration would unduly depreciate the
seriousness of the offense in the eyes of the public.

3. CRIMINAL LAW—SENTENCING—PRESENTENCE REPORT—EXAMINA-
TION BY DEFENDANT—DISCRETION.

The question of granting access to a presentence report is one
addressed to the discretion of the trial court and does not

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 578.
  60 Am Jur 2d, Penal and Correctional Institutions § 3.
[2] 40 Am Jur 2d, Homicide § 44 et seq.
[3, 4] 21 Am Jur 2d, Criminal Law § 303.
[5] 5 Am Jur 2d, Appeal and Error § 938.
  21 Am Jur 2d, Criminal Law §§ 533, 572.

constitute reversible error unless prejudice is shown; normally such reports should be made available to defense counsel, absent such personal or confidential information as the trial court shall find in its sound discretion should remain confidential to the court.

4. CRIMINAL LAW—PRESENTENCE INVESTIGATION—DIAGNOSTIC AND REHABILITATIVE PROCEDURE—DUE PROCESS.

The presentence investigation is not an "adversary proceeding", but is rather part of the diagnostic and rehabilitative procedure, therefore not a "critical stage" of the proceedings, and defendant was not denied due process during the presentence procedure by reason of the fact that he was not advised of his right against self-incrimination, nor of his right to have counsel present during the interview by the probation officers pursuant to their preparation of his presentence report.

5. CRIMINAL LAW—SENTENCE DETERMINATION—REVIEW.

The determination of what is the proper sentence is one of the most difficult tasks facing the trial bench; because of the almost infinite combination of variables which must be considered in fixing sentence, appellate courts are reluctant to engage in any speculation as to what they would have done had this question been put to them initially, and absent some showing that the trial judge disregarded his duty, the Court of Appeals will not interfere with a sentence within statutory limits.

Appeal from Van Buren, David Anderson, Jr., J. Submitted Division 3 December 5, 1972, at Grand Rapids. (Docket No. 13368.) Decided March 27, 1973.

Roger D. Shively was convicted, on his plea of nolo contendere, of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William C. Buhl,* Prosecuting Attorney, for the people.

*Judith K. Munger,* Assistant State Appellate Defender, for defendant.

Before: T. M. Burns, P. J., and Holbrook and Van Valkenburg,* JJ.

Van Valkenburg, J. Defendant was originally charged with first-degree murder in the death of his wife. Later a count of manslaughter, MCLA 750.321; MSA 28.553, was added to the information. Defendant, thereafter, entered a plea of nolo contendere to the added count. After being referred to the probation department for the preparation of the presentence report, defendant was sentenced to a prison term of from 8 to 15 years. From that sentence, defendant appeals as of right.

The sole questions argued on appeal relate to defendant's sentencing.[1] At sentencing the trial judge made the following statement before rendering the sentence:

"And I have been rather well informed about your case. There are a few things which stand out about this matter.

"You were apparently a successful athlete at Western Michigan University. You were a successful student. You had some prior difficulty when you were in the Air Force Academy. And at that particular time you left the Academy without permission and finally wound up, I guess, at the hospital on the base, apparently under the impression that you were in Warren, Ohio. About two weeks after that you resigned from the Academy, but you did enter the Air Force Reserve and completed that.

"The fact that you are here is one of the sad commentaries about life today. The psychiatrists who have reported have both indicated that it is necessary in your case that you receive rather intensive and long

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Appellate counsel originally raised certain questions with respect to the plea-taking procedure; however, the issue relating to the plea taking was thereafter stricken at defendant's request. We therefore will address ourselves only to the sentencing issues.

range psychiatric treatment. I have some difficulty with their recommendation that you should be placed on probation when they tell me that it will require five years of psychiatric treatment before we can relax and be sure that you are not likely to again commit this same offense.

"More than that, it appears that here again is an offense which is to some extent drug related. In reviewing all the information which I have, I am compelled to the conclusion that if it had not been for the use of drugs in your case, that you would not be here today. And I make this comment, because almost every day someone of some stature and some persuasion publishes an article or makes a speech or publishes a statement saying that, after all, marijuana is not anything to be considered illegal, that it should be legalized, and the penalty should be reduced or done away with entirely. And yet here is a person who has every potential for being a successful citizen and is in this Court convicted, in the Court's eyes at least, of the offense of manslaughter, and I think solely because of the use of drugs.

"Much as I would like to follow the recommendation of the psychiatrists, I can't make the necessary finding. I can't find that it would be beneficial to the People of this State, I can't find that it would be other than detrimental to the People of this state not to impose the penalty imposed by the statute in this case. This, not only from the fact that there is from both of the psychiatrists who have reported to me a potential for repeating this offense, but because of the effect that it might have upon the general public and other persons who might find themselves in your position.

"It is with considerable regret, Mr. Shively, that I impose the sentence, which I find necessary."

On appeal defendant asserts that the trial judge improperly fixed the sentence because of his belief that: (1) defendant would repeat his crime; (2) the crime was the product of drugs; and (3) a prison sentence should be imposed to act as a deterrent to others.

There can be little question that the trial judge

was incorrect in his characterization that the psychiatrists indicated a potentiality on the part of the defendant to repeat this offense. Both psychiatrists indicated that the chances of defendant committing the crime again were remote; however, both made that prognosis conditional upon the premise that defendant embark on an extensive and intensive course of psychotherapy.[2]

What probably bothered the trial judge, as it does this Court, is the apparent conflict between the opinions as to defendant's recidivism and the recommendation that he be given intensive and mandatory psychotherapy for a minimum of five years. While the ultimate hope of any correctional plan, be it probation or prison, is to rehabilitate the defendant, if possible, and make his return to society a successful one, the judiciary cannot be unmindful of the fact that the interests of society must also be protected. Were defendant's rehabilitation the sole criterion upon which a correctional plan was based, rarely, except when defendant was a danger to himself, would incarceration be warranted. Defendant's rehabilitation, however, is not the sole criterion; but it is rather one which must be considered along with the question of the protection of society as a whole.

Clearly the trial judge was here confronted with an individual who has demonstrated his inability

---

[2] The center for Forensic Psychiatry opined:

"It is the opinion of the staff at the Center here, that within the bounds of reasonable clinical certainty, were Mr. Shively to embark on a course of intensive psychotherapy, the potential for recidivism is exceedingly low."

Defendant's private psychiatrist opined:

"It is unfortunate that Mr. Shively did not enter into psychiatric treatment upon his resignation from the Air Force Academy. There is even more clinical indication today that he undergo continuous and intensive psychotherapy. The likelihood of a recurrence of an event comparable to that of shooting of his wife, especially with psychotherapy, is extremely remote."

to arrive at a socially acceptable solution to the travails of life. While the likelihood of defendant being confronted with a similar situation may be slight, it is equally clear that there is a definite and recognizable interest on the part of the society as a whole to be protected from defendant until such time as he has been able to learn to use more socially acceptable and less violent solutions to the problems which he may face.

The psychiatrists recommended that defendant be placed on probation during the pendency of the psychotherapy. While such a recommendation may be medically sound, the trial judge found that such a recommendation should not be followed. Not only did the judge feel that societal protection was at stake, but further found that probation was unacceptable "because of the effect that it might have upon the general public and other persons who might find themselves in your [defendant's] position". The committee of the American Bar Association which drafted the *ABA Standards Relating to Probation* (Approved Draft, 1970) has recognized in Section 1.3a(iii) that incarceration rather than probation is proper where the court finds that "it would unduly depreciate the seriousness of the offense if a sentence of probation were imposed".

Although the recidivism rate for family murders is commonly quite low, the courts cannot be unmindful of the seriousness attached by society to the taking of a human life. The trial court was here concerned with the sentencing of a person who had been charged with first-degree murder. The fact that he was allowed to plead to manslaughter, in and of itself, was undoubtedly an affront to a sizable segment of society. Surely, to allow this person to remain in society without

being subjected to some post-sentence incarceration would unduly depreciate the seriousness of the offense in the eyes of the public. Under these circumstances, the trial court properly refused to grant probation.

With respect to the question of drug use, it should be noted that it would appear that the judge's comments in this respect were aimed at pointing out to defendant that a change in habits in the future would be in order. There is absolutely no indication that the severity of the sentence was increased because of defendant's prior drug use. It should be further noted that the ill feelings between defendant and his wife which ultimately resulted in this killing had their genesis in the use of drugs by both parties.

Defendant also asserts error by reason of the trial judge's refusal to allow access to the presentence report by appellate counsel. The question of granting access to the presentence report is one addressed to the discretion of the trial court and does not constitute reversible error unless prejudice is shown. *People v Bernstein,* 36 Mich App 687 (1971); *People v Griffis,* 37 Mich App 249 (1971); *People v Burke,* 38 Mich App 617 (1972); *People v Edgett,* 39 Mich App 392 (1972). Since the trial judge herein clearly delineated the factors considered in fixing sentence, there has been no prejudice shown; and therefore, there was no reversible error in the denial of access to the report. We would note, however, that normally such reports should be made available to defense counsel, absent such personal or confidential information as the trial court shall find in its sound discretion should remain confidential to the court. See *People v Chappell,* 44 Mich App 204 (1972).

Defendant also asserts that he was denied due

process during the presentence procedure by reason of the fact that he was not advised of his right against self-incrimination, nor his right to have counsel present during the interview by the probation officers pursuant to their preparation of his presentence report. The argument is premised on the assertion that the preparation of a presentence report is an "adversary proceeding" and thus a "critical stage". The premise is ill-founded. The presentence investigation is not an adversary proceeding, but is rather part of the diagnostic and rehabilitative procedure.

The determination of what is the proper sentence is one of the most difficult tasks facing the trial bench. Because of the almost infinite combination of variables which must be considered in fixing sentence, appellate courts are reluctant to engage in any speculation as to what they would have done had this question been put to them initially. Absent some showing that the trial judge disregarded his duty, we will not interfere with sentences within statutory limits. After our review of the record herein, we cannot but be impressed with the honest concern and contemplative consideration evidenced by Judge Anderson in fixing this sentence. Neither this Court, nor defendant himself, can ask for or expect more.

Affirmed.

All concurred.