PEOPLE v WRIGHT

Docket No. 78396. Argued October 7, 1987 (Calendar No. 1). Decided September 8, 1988.

Atlee Wright was convicted by a jury in the Detroit Recorder's Court, Warfield Moore, Jr., J., of second-degree murder. The Court of Appeals, MacKENZIE, P.J., and WALSH and SHEPHERD, JJ., affirmed in an unpublished opinion per curiam, holding that a psychiatric examination ordered by the court prior to sentencing to which no objection was raised was properly considered by the court at sentencing (Docket No. 81403). The defendant appeals.

In an opinion by Justice CAVANAGH, joined by Justices LEVIN, BRICKLEY, and ARCHER, the Supreme Court *held:*

A postconviction presentence psychiatric examination of a defendant, ordered by the trial court in the presence of defense counsel without objection and conducted two weeks later outside the presence of counsel, which was referred to by the trial court in imposing sentence, did not violate the defendant's Fifth Amendment right against self-incrimination or his Sixth Amendment right to counsel.

1. Before a trial court may impose sentence on a person convicted of a felony, an inquiry must be made by a probation officer into the antecedents, character, and circumstances of the person. Implicit in the statutory prescription is the option of having a psychiatric examination performed during the presentence investigation. While the Fifth Amendment right against self-incrimination attaches at a court-ordered psychiatric examination used for sentencing purposes, a defendant's right is adequately protected at a postconviction presentence psychiatric examination where, as in this case, although precise *Miranda* warnings are not given, the defendant has had the

REFERENCES

Am Jur 2d, Criminal Law §§ 936 *et seq.,* 967 *et seq.*

Adequacy of defense counsel's representation of criminal client regarding appellate and post conviction remedies. 15 ALR4th 582.

Right of accused in criminal prosecution to presence of counsel at court-appointed or -approved psychiatric examination. 3 ALR4th 910.

assistance of counsel during trial, acknowledges an understanding that anything said during the examination could be reported to the court, and decides to proceed.

2. A defendant has a right to counsel under the Sixth Amendment at all critical stages of criminal proceedings. In this case, the defendant's right to counsel was adequately protected. The examination was ordered in the presence of the defendant and his counsel without objection, and was held nearly two weeks later, affording the defendant ample opportunity to consult with defense counsel prior to participating in the examination.

Affirmed.

Justice BOYLE, joined by Chief Justice RILEY and Justice GRIFFIN, concurring in part and dissenting in part, while agreeing that the defendant failed to demonstrate a denial of his Fifth or Sixth Amendment rights, disagreed with the assumption that the Fifth Amendment right against self-incrimination is applicable in this case and would not reach the merits of the question whether the Sixth Amendment requires advance notice to counsel of a presentence psychiatric examination.

Whether the Fifth Amendment protection applies depends on the nature of the statement or admission and the exposure its admission into evidence would invite. While Fifth Amendment protection does not disappear merely because statements are uttered in the context of a presentence psychiatric examination, neither are such statements to be automatically included within the purview of the Fifth Amendment. The evaluation in this case served as a neutral psychological profile, limited in purpose and use to assist the trial court in determining the sentence to be imposed. The defendant was not compelled to submit to the examination, and would not have been subjected to any legal sanctions had he chosen to remain silent. In addition, he was afforded ample notice and sufficient time to consult with counsel prior to participation. Assuming, arguendo, that the defendant enjoyed a Sixth Amendment right to advance notice to counsel of the examination, no violation of such right occurred. The defendant and his counsel received actual notice of the examination, and it appears that the Sixth Amendment does not require the presence of counsel at the examination.

1. CONSTITUTIONAL LAW — CRIMINAL LAW — SELF-INCRIMINATION —
   RIGHT TO COUNSEL — PRESENTENCE PSYCHIATRIC EXAMINATIONS.
   A criminal defendant's right against self-incrimination and right

to consult with counsel exist at a postconviction court-ordered presentence psychiatric examination (US Const, Ams V, VI).

2. CONSTITUTIONAL LAW — CRIMINAL LAW — SELF-INCRIMINATION —
   RIGHT TO COUNSEL — PRESENTENCE PSYCHIATRIC EXAMINATIONS.

   A postconviction presentence psychiatric examination of a defendant, ordered by the trial court in the presence of defense counsel without objection and conducted two weeks later outside the presence of counsel, which was referred to by the trial court in imposing sentence, did not violate the defendant's Fifth Amendment right against self-incrimination or his Sixth Amendment right to counsel (US Const, Ams V, VI; MCL 771.14; MSA 28.1144).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Criminal Division, Research, Training and Appeals, and *Olga Agnello,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba* for the defendant.

CAVANAGH, J. Defendant asserts that, contrary to *Estelle v Smith,* 451 US 454; 101 S Ct 1866; 68 L Ed 2d 359 (1981), he was not properly informed that he had a Fifth Amendment privilege against self-incrimination and a Sixth Amendment right to counsel at his presentence psychiatric examination. We hold that defendant's Fifth and Sixth Amendment rights were adequately protected by the procedures followed by the trial court and the Detroit Recorder's Court psychiatric clinic. We thus uphold the Court of Appeals affirmance of defendant's conviction.

### BACKGROUND

Following a jury trial in Recorder's Court, defendant was convicted of second-degree murder. At the end of trial in the presence of counsel, the trial judge ordered the defendant to be examined

in the Recorder's Court psychiatric clinic prior to sentencing. Neither defendant nor his counsel objected. The examining psychologist concluded that defendant was assaultive, antisocial, and posed a high risk to the community. At sentencing, the trial judge referred to these findings and sentenced defendant to forty to seventy years' imprisonment. In addition to other issues raised in the Court of Appeals, defendant asserted noncompliance with *Estelle v Smith, supra,* in which the United States Supreme Court held that when the results of a psychiatric examination are used in determining the nature and severity of a convicted defendant's sentence, the defendant's Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel attach. The Court of Appeals affirmed defendant's conviction in an unpublished opinion without discussing *Estelle.*

We granted leave to appeal limited to the issue whether the psychiatric examination was improperly conducted in violation of defendant's Fifth Amendment right against self-incrimination. 426 Mich 864 (1986). Although not included within our order granting leave, we will also discuss the alleged violation of defendant's Sixth Amendment right to counsel, which was briefed by both parties.

Before discussing the *Estelle* holding and the present issues, it is helpful to summarize the three types of psychiatric examinations which are typically performed at forensic psychiatric clinics, and the importance of the one involved here.[1] When a defendant's competency to stand trial is questioned, a competency examination is given to determine his mental state at the time of trial to assure that he understands the charges against

---

[1] Although this opinion and *Estelle* use the term "psychiatric" examination, our holding also applies to presentence examinations performed by psychologists and other mental health professionals.

him and can knowingly assist in his defense.[2] When a defendant pleads not guilty by reason of insanity, a criminal responsibility or sanity examination is given to determine the defendant's mental state at the time of the offense.[3]

In Michigan, the results of competency examinations may not be used at trial as evidence of a defendant's guilt, obviating Fifth Amendment concerns regarding self-incrimination.[4] Also, a defendant must submit to, and participate in, a criminal responsibility examination before being allowed to present an insanity defense at trial.[5] Statements made during that examination are not admissible on any issue other than the defendant's mental illness or insanity at the time of the alleged offense.[6] The *Estelle* Court confirmed that the Fifth Amendment right to remain silent is not implicated when the results of the competency and sanity examinations are used for their intended purposes:

> [T]he interview with Dr. Grigson [the examining psychiatrist] cannot be characterized as a routine competency examination restricted to ensuring that respondent understood the charges against him and was capable of assisting in his defense. Indeed, if the application of Dr. Grigson's findings had been confined to serving that function, no Fifth Amendment issue would have arisen.
>
> Nor was the interview analogous to a sanity examination occasioned by a defendant's plea of

[2] In Michigan, see MCL 330.2020 *et seq.;* MSA 14.800(1020) *et seq.* See also MCR 6.106.

[3] In Michigan, see MCL 768.20a; MSA 28.1043(1).

[4] MCL 330.2028(3); MSA 14.800(1028)(3).

[5] MCL 768.20a(4); MSA 28.1043(1)(4). See *People v Martin,* 386 Mich 407, 428; 192 NW2d 215 (1971). For the Sixth Circuit's treatment of a Fifth Amendment claim under *Estelle* in the context of a sanity examination, see *Watters v Hubbard,* 725 F2d 381, 384 (CA 6, 1984).

[6] MCL 768.20a(5); MSA 28.1043(1)(5). See, e.g., *People v Jacobs,* 138 Mich App 273, 276; 360 NW2d 593 (1984).

not guilty by reason of insanity at the time of his offense. When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case. Accordingly, several Courts of Appeals have held that, under such circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist. [451 US 465.]

The third type of psychiatric examination is the postconviction presentence evaluation, which is either court-ordered or requested as part of the presentence investigative process to determine the defendant's character traits for purposes of sentencing. In Michigan, the Legislature has expressly provided for the preparation of a presentence investigation report in § 14 of the Code of Criminal Procedure:

(1) Before sentencing any person charged with a felony, . . . the probation officer shall inquire into the antecedents, character, and circumstances of the person, and shall report in writing to the court. [MCL 771.14(1); MSA 28.1144(1).]

Implicit within § 14 is the option of having a psychiatric examination performed during the presentence investigation. MCL 771.14(7); MSA 28.1144(7). This is the type of examination which was performed in the present case.

Deciding the appropriate sentence for a convicted criminal is perhaps the most critical stage of a successful criminal prosecution. The information gathered during the state's presentence investigation is usually heavily relied on by the sen-

tencing judge, hence its importance cannot be overemphasized.[7]

In *Estelle,* the Supreme Court held that the prosecution's use of certain psychiatric testimony at the sentencing phase of the defendant's murder trial violated his Fifth and Sixth Amendment rights. In that case, the defendant was convicted of first-degree murder in Texas and was sentenced to death. At the time of the defendant's trial, Texas law required two jury proceedings to impose the death penalty: one to decide guilt and one to determine the penalty. Following conviction in the guilt phase, the state had the burden of proof on three questions in the penalty phase. If the jury answered the questions affirmatively, the judge was bound to impose the death penalty. Of these three inquiries, the one at issue in *Estelle* was the defendant's future dangerousness. The examination which produced the objectionable information was a pretrial competency examination which had been routinely ordered by the judge because the defendant faced the death penalty. The examining psychiatrist, however, was also called as a witness

[7] See, generally, 3 ABA Standards for Criminal Justice (2d ed), Sentencing Alternatives and Procedures, 18-5.1 to 18-5.6, pp 18-332 to 18-418.

See also *People v Lee,* 391 Mich 618, 635; 218 NW2d 655 (1974) (the presentence report is widely regarded as an effective method of supplying information essential to an informed sentencing decision); *People v Brown,* 393 Mich 174, 181; 224 NW2d 38 (1974) (a convicted felon may not waive the mandatory use of a presentence report at sentencing); *People v Triplett,* 407 Mich 510, 515; 287 NW2d 165 (1980) (a defendant must be resentenced when a reasonably updated presentence report is not used); *People v Grier,* 152 Mich App 129, 134; 393 NW2d 551 (1986), lv den 425 Mich 878 (1986) (a defendant has a right to be resentenced when his sentence is based upon inaccurate information in the presentence report); *People v Harvey,* 146 Mich App 631, 636; 381 NW2d 779 (1985) (a sentencing court must respond to a defendant's allegations of inaccuracies in a presentence report); *People v McKeever,* 123 Mich App 533, 541; 332 NW2d 596 (1983), lv den 417 Mich 1100.9 (1983) (a defendant may not be sentenced on the basis of the presentence report prepared for another offense).

during the penalty phase where he testified extensively regarding the defendant's sociopathic character and future dangerousness. The jury answered the "future dangerousness" question and the other two questions affirmatively, and the defendant was sentenced to death.

### FIFTH AMENDMENT ISSUE

The *Estelle* Court held that because the psychiatric examination was used in determining the nature and severity of defendant's sentence, his Fifth Amendment right attached at the examination:

> The essence of this basic constitutional principle is "the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips." [451 US 462.]

We agree with the defendant in the present case that he, too, had a Fifth Amendment right to remain silent at his presentence psychiatric examination. It is not relevant that the defendant's examination occurred prior to trial in *Estelle* and after trial here. Both examinations were used in determining the severity of the defendant's sentence, which was what the *Estelle* Court focused on:

> Just as the Fifth Amendment prevents a criminal defendant from being made " 'the deluded instrument of his own conviction,' " . . . it protects him as well from being made the "deluded instrument" of his own execution.
> We can discern no basis to distinguish between the guilt and penalty phases of respondent's capital murder trial so far as the protection of the

Fifth Amendment privilege is concerned. [451 US 462-463.]

The *Estelle* Court rejected the state's argument that, like voice and handwriting exemplars, line-ups, and blood samples, the defendant's statements were not used for their testimonial content:

> Dr. Grigson's diagnosis, as detailed in his testimony, was not based simply on his observation of respondent. Rather, Dr. Grigson drew his conclusions largely from respondent's account of the crime during their interview, and he placed particular emphasis on what he considered to be respondent's lack of remorse. [451 US 464.]

As in *Estelle,* defendant's statements in the present case were testimonial in nature. The examining psychologist relied on the content of defendant's statements to draw several conclusions about him, including that he was prone to act out in an aggressive manner, and that he was a high social risk to the community.[8]

---

[8] It has been suggested, in discussing pretrial evaluations, that to consider statements made during clinical evaluations to be nontestimonial is "to deny the reality of the clinical endeavor":

> Certain aspects of the clinical evaluation are clearly "nontestimonial" as that term has been defined by the Supreme Court. For example, part of the clinical assessment may consist of a physical examination. The clinical opinion may also rely, to some extent, on the defendant's mannerisms, facial expressions, attention span, speech patterns, and other behavioral characteristics that manifest themselves during the evaluation. These physical traits are analagous [sic] to writing or voice exemplars, and compelled disclosure would probably not be considered violative of the Fifth Amendment even if they proved incriminating.
>
> The bulk of the typical clinical assessment, however, consists of verbal communication between the evaluator and the defendant.
>
> * * *
>
> [E]ven when his goal is solely to reach conclusions about the

The *Estelle* Court concluded that defendant Smith's Fifth Amendment right had not been adequately protected because the defendant was not advised that the results of the competency examination would be later used by the state in seeking the death penalty:

> The state trial judge, sua sponte, ordered a psychiatric evaluation of respondent for the limited, neutral purpose of determining his competency to stand trial, but the results of that inquiry were used by the State for a much broader objective that was plainly adverse to respondent. [451 US 465.]

Under the above circumstances, the *Estelle* Court held that defendant should have received warnings, pursuant to *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), that he had a right to remain silent and that any statement he made could be used against him at a sentencing proceeding.

In *Miranda,* the Court was concerned with protecting a suspect's Fifth Amendment right against self-incrimination under "inherently compelling

defendant's mental state, the clinician depends upon the meaning of the defendant's statements, not upon their form. . . . To use the Court's wording in *Estelle,* almost every clinical evaluation relies heavily on the "substance" of the defendant's statements. To exempt the defendant's verbal disclosures during a pretrial clinical evaluation from Fifth Amendment scrutiny on the ground that they are nontestimonial would be to deny the reality of the clinical endeavor. [Slobogin, Estelle v Smith: *The constitutional contours of the forensic evaluation,* 31 Emory L J 71, 85-87 (1982).]

The above comments are even more apt regarding the type of evaluation in the present case. Examinations used to gather information which will be considered in imposing a sentence are more testimonial and potentially incriminating in nature than statements used solely to evaluate a defendant's mental state.

pressures,"[9] and thus specified mandatory warn-
ings to alert the suspect of his rights. At the time
of a suspect's arrest, he is without counsel, usually
without knowledge of the precise limits of the
potential charges he faces, and without knowledge
of the information which the police have to impli-
cate him in criminal activity. In these circum-
stances, and in light of the history showing fre-
quent abuses of a prisoner's rights, the Supreme
Court in *Miranda* adopted a prophylactic rule:
precise warnings of specific rights must be given
and clear waivers of those rights obtained, before a
prisoner can be interrogated. 384 US 475.

Relying on *Miranda,* the *Estelle* Court held:

> [A]bsent other fully effective procedures, a per-
> son in custody must receive certain warnings be-
> fore any official interrogation, including that he
> has a "right to remain silent" and that "anything
> said can and will be used against the individual in
> court."
>
> * * *
>
> The considerations calling for the accused to be
> warned prior to custodial interrogation apply with
> no less force to the pretrial psychiatric examina-
> tion *at issue here.* [451 US 466-467. Emphasis
> added.]

Defendant asserts that the requirements of *Es-
telle* must be strictly followed in any psychiatric
examination which is considered in determining
the severity of a defendant's sentence. However,
the emphasized portions of the above quotation,
and the following footnote, suggest otherwise:

> Of course, we do not hold that the same Fifth
> Amendment concerns are necessarily presented by
> all types of interviews and examinations that

---

[9] 384 US 467.

might be ordered or relied upon to inform a sentencing determination. [451 US 469, n 13.]

Defendant's examination constituted custodial interrogation in one sense because he was being questioned while in custody. However, such questioning was not tantamount to the custodial interrogation which troubled the *Miranda* Court, where defendants were subjected to "incommunicado interrogation . . . in a police-dominated atmosphere" without being warned of their rights to remain silent or to the assistance of counsel. 384 US 445. In the present case, defendant was questioned by the psychologist after having had the assistance of counsel throughout trial. We can presume that the defendant's attorney had already counseled defendant and informed him of his right against self-incrimination. Similarly, the considerations which led the *Estelle* Court to find that "inherently compelling pressures"[10] were at work on the defendant in that case are absent here.[11]

First, the information in *Estelle* was obtained during a competency examination. That type of examination is ordinarily not used to provide information for sentencing, and in fact the defendant in *Estelle* was not informed that his competency examination would be used for such purpose. Here, the information was obtained from a presentence examination which was clearly conducted to evaluate the defendant's character exclusively for sentencing purposes. Moreover, at the examination the psychologist preceded the evaluation by reading the following information to defendant:

I am one of several examiners of the Psychiatric Clinic of Recorder's Court who will examine and

[10] 451 US 467.

[11] Compare *Jones v Cardwell*, 686 F2d 754, 756 (CA 9, 1982).

talk to you. We must give to the Court a report of
our findings and possibly an option or a recom-
mendation.

The Clinic serves only as an adviser to the Court
and cannot determine the outcome of your case.

The examiner then asked defendant whether he
understood what he had been told and whether he
was willing to proceed. Defendant responded "Yes"
to both questions.[12] Thus, unlike the defendant in
*Estelle,* defendant here knew as he spoke what his
answers would be used for.

Second, the examination in *Estelle* was used by
the state to prove one of the three elements re-
quired to obtain the death penalty. The *Estelle*
Court repeatedly focused on Texas' unique system
and the fact that the defendant faced the death
penalty.[13] In the present case, the information

[12] There is no tape recording or transcript of the examination. In
the appendix to its brief, the people provided a copy of the Recorder's
Court psychiatric clinic "Consent to Examination" form, which was
used at defendant's evaluation. Defendant has not challenged its
accuracy.

[13] A split of authority is developing at the federal level regarding
*Estelle's* applicability to noncapital sentencing proceedings. See n 6 of
the dissent. The Sixth Circuit has not yet addressed that question,
however. While the fact that the defendant faced the death penalty
certainly heightened the *Estelle* Court's concern over his Fifth
Amendment right, we conclude that the right against self-incrimina-
tion recognized in *Estelle* also exists at noncapital sentencing evalua-
tions. See, e.g., note, *Fifth Amendment and compelled psychiatric
examinations: Implications of* Estelle v Smith, 50 Geo Wash L R 275,
295 (1982):

Although the Supreme Court did not venture beyond the
context of a capital sentencing proceeding in *Estelle,* lower
courts may justifiably rely upon *Estelle* in applying the fifth
amendment to other sentencing procedures. Regardless of the
crime committed, the state should be required to warn the
defendant that his disclosures to the psychiatrist may lead to a
longer sentence. The defendant should not be compelled to
acquiesce in the psychiatric examination. Moreover, the sen-
tencing judge should not be able to draw an adverse inference
from the defendant's failure to coöperate with the psychiatrist.
This limitation on the use of psychiatric examinations is appar-
ent from *Estelle.*

appeared to be used generally to reach a fair prison sentence. There were no elements which the state needed to prove beyond a reasonable doubt, which the examination might have helped it do.

The real teaching of *Miranda,* and *Estelle's* application of it, is not a rigid formula, but that the Fifth Amendment must be protected.[14] It would exalt form over substance to say under the facts of the present case that defendant's Fifth Amendment right was violated. The examiner's explanation of the purpose and potential use of the examination, and the inquiry whether defendant was willing to proceed, adequately protected that right.

We emphasize that the absence of uncounseled and coercive interrogations of the kind which called for precise warnings in *Miranda* and *Estelle* does not negate the continued existence of a Fifth Amendment right against self-incrimination. For example, no one would deny that, under the Fifth Amendment, a defendant on trial has a right to remain silent. Yet it has never been argued that failure to give explicit *Miranda* warnings before he testifies would require reversal of a testifying defendant's conviction. Therefore, while we conclude that precise *Miranda* warnings were not required in the present case to protect defendant's right against self-incrimination, we nonetheless hold that such right attaches at a court-ordered psychiatric examination used for sentencing purposes.[15]

### SIXTH AMENDMENT ISSUE

As stated earlier, we did not grant leave on the

---

[14] The warnings mandated by *Miranda* in themselves are not of constitutional dimensions. *Michigan v Tucker,* 417 US 433, 444; 94 S Ct 2357; 41 L Ed 2d 182 (1974).

[15] Our holding today should not be read as diminishing the importance of receiving full *Miranda* warnings in situations which create the "inherently compelling pressures" discussed in *Miranda* and its progeny.

Sixth Amendment issue raised by defendant. Assuming arguendo that the Sixth Amendment right to counsel recognized in *Estelle* applies to the present defendant, we find no violation of that right.

In *Powell v Alabama,* 287 US 45, 57; 53 S Ct 55; 77 L Ed 158 (1932), the United States Supreme Court held that a defendant has a Sixth Amendment right to counsel at all critical stages of criminal proceedings. The *Estelle* Court determined that the defendant had a Sixth Amendment right to the assistance of counsel before submitting to the psychiatric examination:

> [R]espondent's Sixth Amendment right to counsel clearly had attached when Dr. Grigson examined him at the Dallas County Jail, and their interview proved to be a "critical stage" of the aggregate proceedings against respondent. [451 US 470.]

The Court clarified in a footnote that it was not holding that the defendant had a right under the Sixth Amendment to have counsel present during the examination:

> [T]he issue before us is whether a defendant's Sixth Amendment right to the assistance of counsel is abridged when the defendant is not given *prior opportunity* to consult with counsel about his participation in the psychiatric examination. . . .
> Respondent does not assert, and the Court of Appeals did not find, any constitutional right to have counsel actually present during the examination. In fact, the Court of Appeals recognized that "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination." [*Smith v Estelle*] 602 F2d [694], 708 [CA 5, 1979]. [451 US 470, n 14. Emphasis added.]

The *Estelle* Court held that the defendant was

not afforded his right to counsel[16] because his
attorneys were not notified in advance that the
pretrial competency examination would also en-
compass the issue of their client's future danger-
ousness:

> [R]espondent was denied the assistance of his
> attorneys in making the significant decision of [sic]
> whether to submit to the examination and to what
> end the psychiatrist's findings could be employed.
> [451 US 471.]

In fact, there was some doubt that counsel had
ever been informed of the competency examina-
tion itself. 451 US 471, n 15.

In the present case, defendant asserts that he
and his counsel were not given sufficient notice of
the presentence examination and, hence, that de-
fendant was denied assistance of counsel prior to
participating in the examination. Defendant's
claim is not supported by the record, however. The
trial court ordered the examination in the pres-
ence of defendant and his counsel. The examina-
tion was held nearly two weeks later. This period
of time afforded defendant ample opportunity to
consult with his counsel prior to the examination.
If defendant did not recognize such opportunity, it
can be assumed, at the very least, that his counsel
did. The facts which prompted the *Estelle* Court to
find that the defendant's Sixth Amendment right
was violated are not presented here. Further, we
decline to review defendant's vague assertion that
he had a right to have counsel present in the
examining room. He relies exclusively on *Estelle*

[16] See *Satterwhite v Texas,* 486 US 249; 108 S Ct 1792; 100 L Ed 2d
284 (1988), where the Court adopted the harmless error rule of
*Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967),
for reviewing Sixth Amendment claims under *Estelle.*

in asserting that right, and, as noted above, *Estelle* did not reach that issue.[17]

While we affirm the Court of Appeals result, we do not adopt its rationale.[18] Defendant's conviction is affirmed.

---

[17] But see, *People v Martin, supra* at 429, where the Court considered this question in the context of a sanity examination.

[18] In addressing the present issues, the Court of Appeals did not cite *Estelle,* but simply referred to it as one of "the federal cases relied upon by defendant . . . ." The Court relied on three of its cases in contravening *Estelle* and holding that a psychiatric interview is not an adversarial proceeding at which a defendant's Fifth and Sixth Amendment rights attach: *People v Burton,* 44 Mich App 732; 205 NW2d 873 (1973), lv den 389 Mich 795 (1973); *People v Vroman,* 148 Mich App 291; 384 NW2d 35 (1985); *People v Murphy,* 146 Mich App 724; 381 NW2d 798 (1985).

*People v Burton* was decided prior to *Estelle,* and thus the Court of Appeals reliance on it in evaluating defendant's post-*Estelle* claims was of marginal value. To the extent *Burton* conflicts with our holding today, it is overruled.

*People v Vroman* does conflict with *Estelle,* which it fails to cite when rejecting Fifth and Sixth Amendment claims almost identical to the present ones:

As opposed to a sentencing conference, a defendant's presentence interview is not an adversarial proceeding, but a diagnostic and rehabilitative procedure. Accordingly, *the right against self-incrimination or to have counsel present does not attach.* . . . Likewise, psychiatric evaluation is a diagnostic procedure to which we believe the privilege against self-incrimination is not applicable. The purpose of the privilege is to assure that no one will be convicted upon his own coerced confession. . . . *We do not believe that the privilege should be extended to clinical interviews which take place after a guilty plea has been entered* and which have a purpose quite different from the determination of guilt. [148 Mich App 297. Emphasis added.]

The above language from *Vroman* conflicts with *Estelle* and our present holding, and to that extent it is overruled.

*People v Murphy* supports the Court of Appeals result, but not its analysis. The *Murphy* Court did not reject the notion that a defendant is entitled to his Fifth Amendment right against self-incrimination at a psychiatric examination, as does the Court of Appeals here. In *Murphy,* the defendant was evaluated at a presentence postconviction psychiatric examination in the Recorder's Court, where he was apparently given a consent form similar to the one used in the present case. The *Murphy* Court found that the Fifth Amendment rights existed, that the defendant was adequately informed of them, and that he waived them:

LEVIN, BRICKLEY, and ARCHER, JJ., concurred with CAVANAGH, J.

BOYLE, J. (*concurring in part and dissenting in part*).

I

We are asked to decide in this case whether one who has been convicted of a crime and is remanded to undergo a psychiatric examination as part of the presentence investigation must be given *Miranda*[1] warnings under the rule announced in *Estelle v Smith,* 451 US 454; 101 S Ct 1866; 68 L Ed 2d 359 (1981). While not included in this Court's order granting leave to appeal, we are also asked to decide whether defendant possessed a Sixth Amendment right to the assistance of counsel during the presentence psychiatric examination. The majority concludes that while the Fifth Amendment privilege against self-incrimination attaches at a psychiatric examination when ordered as part of a presentence investigation, the defendant's rights were adequately protected in this case, notwithstanding the absence of *Miranda* warnings.

I agree with the majority that no Fifth Amendment violation is present in this instance, and

[D]efendant signed a waiver form and agreed to proceed with the full knowledge that the court could be informed of the results of the interview. Considering these facts, we feel that defendant voluntarily waived his rights and that the trial court properly considered the psychiatric report at sentencing. [146 Mich App 728.]

We reject that portion of *Murphy* which distinguished *Estelle* from its facts because Murphy's psychiatric evaluation occurred after he was convicted.

[1] 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

therefore concur in that result.[2] Assuming arguendo that the Sixth Amendment advance notice to counsel requirement applies to presentence postconviction psychiatric interviews, I agree that the record does not support the claimed violation of that rule.

A

The United States Supreme Court has determined that the applicability of the Fifth Amendment right against self-incrimination turns on two subsidiary questions—the nature of the statement or admission involved, and the exposure to defendant that admission into evidence of the statement or admission would invite. *In re Gault,* 387 US 1, 49; 87 S Ct 1428; 18 L Ed 2d 527 (1967). Foregoing this analysis, however, the majority proceeds on the bare assumption that the defendant possessed a Fifth Amendment right against self-incrimination at a psychiatric examination used for sentencing purposes, while openly acknowledging that the factors prompting the *Smith* Court to find the Fifth Amendment applicable in that case are not present here.

While I agree that a convicted defendant retains a Fifth Amendment privilege not to incriminate himself during a presentence interview with regard to activity unrelated to the crime for which he has been convicted,[3] I cannot agree with the

[2] Defendant has also attempted to raise claims under Const 1963, art 1, §§ 17 and 20. While observing that these claims extend outside this Court's order granting leave to appeal, we also note that defendant has not offered authority to support the argument that a different result should obtain under art 1, §§ 17 and 20 than under the Fifth and Sixth Amendments of the United States Constitution. Thus, we conclude that defendant's appeal lacks an independent state ground and proceed to address his federal claims. *Michigan v Long,* 463 US 1032; 103 S Ct 3469; 77 L Ed 2d 1201 (1983).

[3] In *People v DenUyl,* 318 Mich 645; 29 NW2d 284 (1947), this Court

majority's assumption that the Fifth Amendment applies to the use of a defendant's interview with a psychiatrist bearing only on the potential range of a legislatively determined sentence. Unlike *Smith,* this is neither a situation in which the question of the penalty to be imposed was to be resolved in an evidentiary proceeding, nor a situation in which the defendant was compelled to submit to the psychiatric evaluation. Nor is this a situation like that in *Smith,* where the defendant was unaware that the psychiatrist was obtaining evidence that would be used against him for another purpose and in a different context than the limited function of the psychiatric examination. Indeed, as the Court noted in *Smith,* "if the application of Dr. Grigson's findings had been confined to serving that function, no Fifth Amendment issue would have arisen," *Estelle v Smith, supra,* p 465.

In my view, *Smith* does not compel the conclusion that the Fifth Amendment applies to statements made by a defendant in this context. While in an abstract sense it is correct to state that the Fifth Amendment is always applicable to prohibit "use by the prosecution in its case in chief only of

found that the privilege against self-incrimination under Const 1908, art 2, § 16 protects a witness in a state proceeding from testifying to facts which could lead to incrimination in a pending federal prosecution. Although preceding the United States Supreme Court's decision in *Malloy v Hogan,* 378 US 1; 84 S Ct 1489; 12 L Ed 2d 653 (1964), which ruled the Fifth Amendment privilege against self-incrimination applicable to the states, *DenUyl* has been viewed as establishing that the privilege against self-incrimination applies when an appeal remains pending as to a conviction to which the statement would relate. See *People v Giacalone,* 399 Mich 642, 644, n 3; 250 NW2d 492 (1977); *People v Lindsay,* 69 Mich App 720, 722-723; 245 NW2d 343 (1976); *People v St Onge,* 63 Mich App 16, 18; 233 NW2d 874 (1975); *People v Thomas,* 55 Mich App 368, 370; 222 NW2d 320 (1974).

Counsel for the defendant does not contend that the defendant made statements during the interview regarding the crime he had been convicted of, and we therefore have no occasion to consider whether the defendant retained a Fifth Amendment privilege as to the crime of which he had already been convicted.

compelled testimony," *Oregon v Elstad,* 470 US
298, 306; 105 S Ct 1285; 84 L Ed 2d 222 (1985), the
Court's approach in *Smith* illustrates that the
relevant inquiry requires an examination of the
government's obligation in the circumstances pre-
sented. Thus, the Court in *Smith* answered the
question "whether the Fifth Amendment privilege
is applicable in the circumstances of this case," *id.,*
p 461, by looking to the use made of the state-
ments and concluding that if the government uses
compulsory examination to gather evidence
against a defendant, the government is obligated
to advise the defendant that he has "a constitu-
tional right not to answer the question put to
him." *Id.,* p 467.

Absent further guidance, the conclusion I draw
from *Smith* is that while the protection of the
Fifth Amendment privilege does not disappear
merely because the respondent's statements were
uttered in the context of a presentence psychiatric
examination, *id.,* p 465, neither does the fact that
defendant made statements during the psychologi-
cal examination automatically include them
within the reach of the Fifth Amendment.
Whether the Fifth Amendment applies depends
upon the nature of the statement or admission and
the exposure which it invites. Thus, if the issue
here were whether a psychologist who obtained
information at a presentence examination that the
defendant had admitted the commission of another
crime could testify on the issue of guilt at the
defendant's trial for that crime, *Smith* might well
compel the answer that the Fifth Amendment is
applicable. In my judgment, however, *Smith* does
not compel the conclusion that the Fifth Amend-
ment applies to every postconviction interview.

B

In concluding that the Fifth Amendment applied to the facts presented in *Smith,* the Supreme Court looked to several distinct factors. First, the Court assessed the gravity of the decision to be made at the penalty phase of the prosecution and concluded that the Fifth Amendment was applicable at a capital-sentencing hearing.

Next, rejecting the state's claim that defendant's communications to Dr. Grigson were nontestimonial, the *Smith* Court considered the fact that the state, in seeking the death penalty, *used as evidence* detailed descriptions of statements made by defendant to the state's psychiatrist during the course of a pretrial competency examination. These statements were offered to prove to the jury the defendant's future dangerousness during the penalty phase of the proceeding. The Court viewed as dispositive the fact that "Dr. Grigson drew his conclusions largely from respondent's account of the crime during their interview, and he placed particular emphasis on what he considered to be respondent's lack of remorse," 451 US 464. Because the prognosis as to defendant's future dangerousness rested on the defendant's own recitation of the details of the crime, and because these statements were used as direct evidence against the defendant during the penalty phase of the proceeding, the Fifth Amendment was implicated.

Finally, the Court acknowledged "the[ ] distinct circumstances" of the case, 451 US 466, noting that the trial judge, sua sponte, had ordered the psychiatric examination.

By contrast in the instant case, as the majority properly notes, the facts found by the *Smith* Court to mandate the observance of Fifth Amendment rights are simply inapposite to those found here.

First, we do not operate under a bifurcated trial system in which the state must prove certain facts beyond a reasonable doubt to secure a desired

OPINION BY BOYLE, J.

sentence in a contested adversarial context.[4] Thus, it cannot be said that information given by the defendant provided evidence against him that reduced the government's burden to shoulder the load.

Second, the purpose of the instant examination was limited to assistance in the sentencing decision. By contrast, as the Court observed in *Smith,* Dr. Grigson's examination had not been restricted to serving the neutral purpose of determining defendant's competency to stand trial, in which case, "no Fifth Amendment issue would have arisen." *Id.,* p 465. However, "[w]hen Dr. Grigson went beyond simply reporting to the court on the issue of competency and testified for the prosecution at the penalty phase on the critical issue of respondent's future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting." *Id.,* p 467. In this case, Mr. Crenshaw's examination contained no reference to the details of the instant crime or any other criminal activity by defendant.[5] Rather, his evaluation served only as a neutral psychological profile based on the defendant's family background, school, and work history, and the results of a battery of psychological testing. Mr. Crenshaw did not become an agent for the state securing disclosures to be used against the defen-

---

[4] Further, we do not have capital punishment in this state, thus distancing the *Smith* rationale. The majority concludes that the *Smith* holding applies to noncapital proceedings. *Ante,* p 294, n 13. The courts have split on whether to limit *Smith* to capital sentencing cases, see, e.g., *Baumann v United States,* 692 F2d 565, 576 (CA 9, 1982); *United States v Jones,* 640 F2d 284, 288 (CA 10, 1981); cf. *United States v Chitty,* 760 F2d 425, 432 (CA 2, 1985).

[5] There has here been no allegation and no showing that the examining psychologist employed statements taken from defendant concerning the details of the crime when he compiled his evaluation for insertion in the presentence report to the trial judge.

dant for a purpose of which the defendant was
unaware. His only function was to provide his
findings to the trial judge and this was the only
use made of his report.

Finally, the defendant was not compelled to
submit to this examination, and was not subject to
any legal sanctions, such as the threat of con-
tempt, had he chosen to remain silent. The very
fact that the defendant was informed of the exami-
nation by the trial judge during formal proceed-
ings, was provided with the Recorder's Court "Con-
sent to Examination" form explaining the purpose
of the examination and the role of the examiner,
and was asked whether he understood and was
willing to proceed prior to his participation under-
scores the noncoercive nature of the examination.
The defendant's interview was not compelled and
thus is not within the *Smith* proscription that a
defendant may not be compelled to respond to a
psychiatrist if his statements can be used against
him at a capital sentencing proceeding.

Underscoring the importance of the purpose to
which compelled disclosures are ultimately put,
the Court has recently observed in *Buchanan v
Kentucky,* 483 US 402, 425, n 21; 107 S Ct 2906; 97
L Ed 2d 336 (1987), that if upon being adequately
advised, a defendant expresses his desire to refuse
to answer any questions, a pretrial competency
examination can still proceed "upon the condition
that the results would be applied solely for that
purpose," cf. *Estelle v Smith, supra,* p 468. Thus,
as the Court observed in *Smith,* the proper con-
duct and use of competency examinations are not
frustrated, but the state must make its case on
future dangerousness in some other way.

The clear import of those statements for the
case at hand is that *Smith* precludes the use of

statements "compelled" for one purpose as evidence in another proceeding against the defendant. The Fifth Amendment right in question is the right to decline to undergo a custodial inquiry in which defendant's statements will be used for incriminatory purposes. It should follow that the statements in issue here which were obtained for a valid purpose and used *solely* for that nonevidentiary purpose do not implicate the Fifth Amendment.

It thus appears that the rule of *Smith* that the Fifth Amendment applies to preclude the use of compelled disclosures as evidence against a defendant is simply inapplicable in this instance. The facts leading that Court to conclude that the Fifth Amendment was applicable are not found here. The majority has offered no justification for the conclusion that the defendant had a Fifth Amendment privilege in this circumstance.

An examination of the cases dealing with *Smith* claims resulting from postverdict, presentence interviews or examinations reveals that only in the instance where a state agent sought a confession concerning additional criminal activity for which the defendant might have been prosecuted was the Fifth Amendment privilege deemed applicable. See *Jones v Cardwell*, 686 F2d 754, 756 (CA 9, 1982) (defendant was instructed by the court that he had no choice but to answer a probation officer's questions); *Arnett v Ricketts*, 665 F Supp 1437, 1444 (D Ariz, 1987) (*Miranda* warnings were required before questioning concerning details of other crimes).

It is clear from the record here that the defendant was not questioned concerning other crimes for which he might have been prosecuted. His complaint centers on the trial judge's consideration of the conclusion contained in the psychiatric

report that defendant demonstrated an assaultive personality. The rule found in *Jones* and *Arnett* is, therefore, not applicable to this appeal.[6]

*Smith* does not command us to constitutionalize the sentencing process by applying *Miranda* Fifth Amendment jurisprudence to all presentence information received by the trial judge. In *Smith,* the defendant was examined *only* to determine his competence, but the state later used the psychiatrist's testimony at the penalty phase of the proceedings. The Court held "these distinct circumstances," 451 US 466, which included the fact that the defendant had not raised any issue of competency and had been given no notice that the results could be used against him at the sentencing phase, had denied the defendant his Fifth Amendment rights.

The Court's holding was specific and limited:

> A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding. [*Id.,* p 468.]

Moreover, the Court carefully noted that it was not holding that the same "Fifth Amendment concerns are necessarily presented by all types of

---

[6] The Ninth Circuit soundly rejected this claim in *Baumann v United States,* 692 F2d 565 (CA 9, 1982). In *Baumann,* the defendant argued that an uncounseled interview with a probation officer for the purpose of constructing a presentence report constituted custodial interrogation requiring *Miranda* warnings. Rejecting the *Smith* analysis as factually inapposite, the *Baumann* court concluded that there was nothing of record to enable the court to find that the presentence interview in that case, or presentence interviews in general, "entail pressures at all similar to those 'which the *Miranda* Court found so inherently coercive as to require its holdings.' " 692 F2d 577. To do so, the court found, "would be to apply a principle 'broader than that required to implement the policy of *Miranda* itself.' " *Id.*

interviews and examinations that might be ordered or relied upon to inform a sentencing determination," *id.*, p 469, n 13.

*Smith* does not dictate the result in this case.

## II

Assuming, arguendo, that the defendant enjoyed a Fifth Amendment privilege during the psychiatric evaluation, I cannot agree with the majority conclusion that defendant's rights were not violated. I would not reach the question whether the full panoply of the prophylactic warnings required by *Miranda* must be given in this situation. I would conclude without reaching that question that if the Fifth Amendment is applicable to the use of a postsentence psychological interview for sentencing purposes, defendant would at a minimum, be entitled to a warning of his right to remain silent, failing which a resentence must be ordered.

It is clear on this record that the defendant's statements were not involuntary as that term is historically defined in Fifth Amendment jurisprudence.[7] The defendant was informed by the sen-

---

[7] In *Michigan v Tucker*, 417 US 433, 441; 94 S Ct 2357; 41 L Ed 2d 182 (1974), the Court explained:

Before *Miranda* the principal issue in these cases was not whether a defendant had waived his privilege against compulsory self-incrimination but simply whether his statement was "voluntary." In state cases the Court applied the Due Process Clause of the Fourteenth Amendment, examining the circumstances of interrogation to determine whether the processes were so unfair or unreasonable as to render a subsequent confession involuntary. See, e.g., *Brown v Mississippi*, 297 US 278 [56 S Ct 461; 80 L Ed 682] (1936); *Chambers v Florida*, 309 US 227 [60 S Ct 472; 84 L Ed 2d 716] (1940); *White v Texas*, 310 US 530 [60 S Ct 1032; 84 L Ed 1342] (1940); *Payne v Arkansas*, 356 US 560 [78 S Ct 844; 2 L Ed 2d 975] (1958); *Haynes v Washington*, 373 US 503 [83 S Ct 1336; 10 L Ed 2d 513] (1963). See also 3 Wigmore, Evidence (Chadbourn rev), § 815 *et seq.*

tencing judge while in the presence of counsel that he was to undergo a presentence investigation and psychiatric examination. By contrast, in the typical *Miranda* situation, the defendant is not afforded the opportunity to consult with counsel prior to the custodial interrogation. See *United States ex rel Bachman v Hardy,* 637 F Supp 1273 (ND Ill, 1986). It is the inability to seek the advice of counsel, to prepare for the possibility that the examiner may attempt to elicit privileged information, coupled with the pressures of the custodial environment, that triggers the need for the *Miranda* warnings. In this case, however, while defendant was obviously in custody at the time of the presentence examination, he was afforded ample notice and nearly two weeks to consult with counsel prior to his participation. Further, defendant was not under court order to coöperate with the examining psychiatrist, yet freely chose to do so after reviewing the "Consent to Examination" form prior to the examination which explained the purpose of the examination and asked whether he was willing to proceed.

Thus, the defendant was under no threat of legal sanction such as perjury or contempt for his failure to participate. When asked to participate, defendant surely had to weigh the possibility that his statements would aid the examiner in formulating an opinion as to his character, which in turn would become part of the presentence report for the sentencing judge to review. However, when offered the option to forego the examination, defendant freely chose to proceed. Defendant's statements were voluntary and not compelled in viola-

---

Where the State's actions offended the standards of fundamental fairness under the Due Process Clause, the State was then deprived of the right to use the resulting confessions in court.

tion of the Fifth Amendment. See *United States v Barragan,* 793 F2d 1255, 1260 (CA 11, 1986); *United States v Jones,* 640 F2d 284, 288 (CA 10, 1981).

This analysis does not end the inquiry, however. If the Fifth Amendment applies and the examination at issue constituted "custodial interrogation,"[8] the question for resolution is whether the failure to provide the prophylactic rules developed to protect the right requires exclusion of the report at sentencing. The majority proceeds, at least implicitly, on the assumption that the psychological examination was custodial interrogation, yet finds no violation of defendant's rights because the "inherently compelling pressures" typical of those prompting *Miranda* warnings are not found in this case. If the majority's assumption is true concerning the custodial character of the psychological examination, I would conclude that defendant's rights were not adequately protected.

To be sure, the United States Supreme Court has observed that *Miranda* warnings are not of constitutional dimension, but rather a means to protect fundamental rights.[9] The Court has, how-

[8] It should be observed that there is an unargued and unresolved issue in this case whether the psychological interview was custodial interrogation and, if so, whether defendant made any inculpatory or exculpatory statements which the prosecution used against him absent *Miranda* warnings.

[9] In *Michigan v Tucker, supra,* pp 438-439, the Court concluded that incomplete *Miranda* warnings did not deprive the defendant of his Fifth Amendment privilege. In reply to custodial police questioning which had not included the required *Miranda* warning that defendant would be furnished counsel free of charge, defendant gave the police the name of an individual he had allegedly been with at the time of the crime. When contacted by the police, this person said defendant had left him earlier in the evening on the night of the rape, and provided the police with admissions made to him by the defendant. At trial defendant's own statements taken during interrogation were excluded, but the witness whose identity had been learned during the interview was allowed to testify that defendant had told him that the scratches on his face had been made by a "widow woman" who lived the next block over. As described by the Court, the issue was whether

ever, albeit in dicta, recently observed in the context of evaluating rights attendant to a competency hearing when the trial judge has doubts about a defendant's mental condition, see *Pate v Robinson,* 383 US 375; 86 S Ct 836; 15 L Ed 2d 815 (1966), that "the Fifth and Sixth Amendments would mandate that [defendant] be allowed to consult with counsel and be informed of his right to remain silent." *Buchanan v Kentucky, supra,* 483 US 402, n 21. In this case it is clear that defendant was afforded the opportunity to consult with counsel, but it is equally clear that he was not told of his right to remain silent. Were I satisfied that the Fifth Amendment applied to the examination at issue and that the examination constituted custodial interrogation, as the majority plainly assumes, it would appear that the defendant's sentence should be vacated notwith-

proper regard for the privilege against compulsory self-incrimination requires, with limited exceptions not applicable here, that all evidence derived solely from statements made without full *Miranda* warnings be excluded at a subsequent criminal trial. . . . [W]e believe that the question thus presented is best examined in two separate parts. We will therefore first consider whether the police conduct complained of directly infringed upon respondent's right against compulsory self-incrimination or whether it instead violated only the prophylactic rules developed to protect that right. We will then consider whether the evidence derived from this interrogation must be excluded.

The Court noted that the Fifth Amendment right against compelled disclosure had been given broad scope, but concluded that the facts of the case as compared to the historical circumstances underlying the privileges "strongly indicate[] that the police conduct here did not deprive respondent of his privilege against compulsory self-incrimination as such, but rather failed to make available to him the full measure of procedural safeguards associated with that right since *Miranda." Id.,* p 444. The Court concluded that the respondent's statements could hardly be termed involuntary as that term had been defined in its decisions and also observed "[a]dditionally, there were no legal sanctions, such as the threat of contempt, which could have been applied to respondent had he chosen to remain silent. He was simply not exposed to 'the cruel trilemma of self accusation, perjury or contempt.' " *Id.,* p 445.

standing the precautions taken prior to the questioning.

### III

Defendant further claims that *Estelle v Smith, supra,* requires us to conclude that his Sixth Amendment right to the assistance of counsel was violated. *Estelle v Smith* establishes that defense counsel must be given advance notice of a pretrial competency hearing where the results may be used as evidence on the issue of future dangerousness in a death-penalty proceeding. Defendant in this case acknowledges that counsel was given actual advance notice of the presentence psychiatric interview. Assuming that the Sixth Amendment advance notice holding in *Smith* applies to a postconviction presentence interview, I agree with the majority that defendant has failed to present any Sixth Amendment claim of error on this record.

Specifically, the defendant here contends that the Sixth Amendment mandates a) that the defendant and his trial counsel be informed that "defendant would be *interviewed* by a member of the clinic" and b) that counsel be present during the interview. As to the former contention, the defendant does *not* claim that counsel did not receive actual advance notice that an evaluation would be made. The defendant focuses on the adequacy of notice, asserting that counsel was not advised when the defendant would be interviewed or that the report would be based on a personal interview with the defendant, rather than a profile drawn from other sources. Because the defendant in this case is not claiming that counsel was *not* given advance notice that the examination was to be conducted, but, rather, contests the adequacy of the notice, we have no occasion to resolve the

question as to whether the Sixth Amendment *Smith* holding applies in this case.[10]

I would conclude that, assuming arguendo that defendant enjoyed a Sixth Amendment right to advance notice to counsel of the examination,[11] no violation of such right occurred. The defendant and his counsel received actual notice of the examination, and it appears that the Sixth Amendment does not require counsel's presence during the examination.[12]

### CONCLUSION

I agree with the majority that the defendant has failed to demonstrate a denial of either his Fifth or Sixth Amendment rights. I disagree with the majority to the extent it assumes that the Fifth

[10] The wisdom of the traditional view that the Court does not resolve constitutional issues unnecessary to a decision, *People v Adams,* 430 Mich 679, 699; 425 NW2d 437 (1988), is particularly apropos here; the Sixth Amendment issue was not the subject of the order granting leave, and neither brief undertakes any significant analysis as to whether the *Smith* holding that the defense counsel must be given advance notice of such an examination applies, or whether, if error occurred, it was harmful. *Satterwhite v Texas,* 486 US 249; 108 S Ct 1792; 100 L Ed 2d 284 (1988). The prosecution appears to concede the issue, and the defendant's brief does not dispute that notice was given. Having been informed of the purpose the examination would serve, "It can be assumed—and there are no allegations to the contrary,—" that defense counsel consulted with the defendant about the nature of the examination, *Buchanan v Kentucky, supra,* 483 US 402.

[11] We note that this Court has never held that a criminal defendant enjoys the right to the assistance of counsel during postconviction proceedings. In *People v Gonyea,* 421 Mich 462; 365 NW2d 136 (1984), three members of the Court found that the defendant possessed a right to counsel under Const 1963, art 1, § 20, during postsentencing proceedings.

[12] See *United States v Byers,* 239 US App DC 1; 740 F2d 1104 (1984); *Baumann v United States,* n 6 *supra* at 578; *People v Daniels,* 149 Mich App 602, 609; 386 NW2d 609 (1986); *People v Vroman,* 148 Mich App 291, 297; 384 NW2d 35 (1985); *People v Shively,* 45 Mich App 658, 664-665; 206 NW2d 808 (1973); *People v Burton,* 44 Mich App 732, 734-735; 205 NW2d 873 (1973). See also anno: *Right of accused in criminal prosecution to presence of counsel at court-appointed or -approved psychiatric examination,* 3 ALR4th 910, 920-925.

Amendment right against self-incrimination is applicable in this context. I also agree that we need not reach the merits of the question whether the Sixth Amendment requires advance notice to counsel of a presentence psychiatric examination.

I would affirm the decision of the Court of Appeals.

RILEY, C.J., and GRIFFIN, J., concurred with BOYLE, J.